### COLUMBIA HEIGHTS NURSING HOME AND HOSPITAL, INC.

v.

### Caspar W. WEINBERGER, Secretary of Health, Education and Welfare, et al.

### Civ. A. No. 74–159.

United States District Court,
M. D. Louisiana.

Sept. 3, 1974.

John J. McKeithen, Columbia, La., Victor A. Sachse, Frank P. Simoneaux, Breazeale, Sachse & Wilson, Baton Rouge, La., for plaintiff.

Douglas M. Gonzales, U. S. Atty., Robert S. Leake, Asst. U. S. Atty., M.D.La., Baton Rouge, La., for defendants.

E. GORDON WEST, District Judge:

This case arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., which establishes the Health Insurance for the Aged and Disabled Program, popularly referred to as Medicare.

The plaintiff, Columbia Heights Nursing Home and Hospital, Inc., (hereinafter called "Columbia Heights"), operates a relatively small, 27 bed hospital and a 90 bed nursing home located in the rural community of Columbia, Louisiana. Both operations, together with a pharmacy, are housed in the same building complex. Columbia Heights has participated in the Medicare program as a "Provider of Services" since its inception on July 1, 1966. Pursuant to the provisions of 42 U.S.C. § 1395cc(a)(1)(A), a provider of services agrees not to charge Medicare beneficiaries directly but instead agrees to receive payment for services provided from the Medicare fund. Payments due a provider of services are based upon the "reasonable cost of services rendered" as defined in 42 U.S.C. § 1395f(b). Since Columbia Heights is a "provider of services" un-

der the Medicare program only insofar as the hospital operation is concerned, it is necessary to separate the "cost of services" rendered by the hospital from those involved in the operation of the nursing home and pharmacy. While the term "reasonable cost" is defined generally in the Act, Congress, nevertheless, directed the Secretary of Health, Education and Welfare (Secretary) to establish regulations for determining reasonable cost. 42 U.S.C. § 1395x(v)(1). These regulations have been established by the Secretary and properly promulgated. See 20 CFR 405.401, et seq.

For the purposes of administrating the Medicare program, the Secretary, pursuant to the provisions of 42 U.S.C. § 1395 et seq., contracted with Blue Cross Association (BCA) of Chicago, Illinois, to act as his "intermediary." BCA in turn contracted with Louisiana Hospital Service, Inc., a Blue Cross Plan organization, to assume BCA's obligation in certain areas, including Columbia, Louisiana. One of the obligations of BCA and Louisiana Hospital Service was to receive periodic cost reports from the provider (in this case, Columbia Heights), have them audited and verified, and make final settlement with the provider. In carrying out this obligation, Louisiana Hospital Service, in July of 1966, employed J. K. Byrne & Co., of New Orleans, Louisiana, a firm of C.P.A.'s, to audit cost returns of various providers and to approve settlements of accounts. This firm in turn formed a syndicate with several other C.P.A. firms to assist in different areas. The firm of Roberts and Cherry, of Shreveport, Louisiana, was assigned to audit Columbia Heights.

The procedure followed was for Columbia Heights to submit its cost reports to Louisiana Hospital Service at the end of the reporting period, and for the Louisiana Hospital Service to receive the reports and make a tentative settlement with Columbia Heights based upon those reports. Thereafter the reports were sent to the auditor, in this case, Roberts and Cherry, for field audit and

for any adjustments that might be necessary. Their audit and recommendation was then returned to Louisiana Hospital Service who, after receiving the audit report, would make a final settlement if the audit showed that an adjustment of the tentative settlement was required. Columbia Heights filed their reports timely for each of the fiscal years 1967, 1968, 1969, 1970, 1971, and 1972, and were paid for each year according to their reports. The 1967 report was audited by the C.P.A.'s retained by Blue Cross on December 27, 1967, and final settlement was made on February 26, 1970, without any significant change. The 1968 report was timely made and audited in October of 1968 and final settlement was made on May 4, 1970, without significant change from the tentative settlement previously made. The fiscal 1969 report was audited on October 1, 1969, and final settlement was made on March 15, 1971 without significant change. In the middle of 1971 the intermediary, Blue Cross, decided to no longer employ independent C.P.A. firms to audit the reports but instead to assemble its own staff of auditors to do this work. As a result of this change in procedure, although Columbia Heights' reports for the fiscal years 1970, 1971 and 1972 were timely filed, and tentative payments made as in prior years, these reports were not audited until November of 1972. One year later, on December 18, 1973, Columbia Heights was notified by letter that for the years 1969 through 1972 it had been overpaid the sum of $260,413, and that in order for Louisiana Hospital Service, Inc. to recover that amount for the Department of Health, Education and Welfare, it would withhold approximately $7,800 per month from Medicare payments to become due to Columbia Heights in the future until the total amount had been recovered. These alleged overpayments to Columbia. Heights resulted primarily from what the new staff auditors of Blue Cross claimed to be improper allocations of "reasonable costs" of services rendered as between the hospital and

nursing home, bearing in mind that it is only the reasonable costs involved in the services rendered by the hospital that are covered by the Medicare program. When the new staff auditors reviewed the reports of Columbia Heights in 1972 they not only set up a new procedure for allocation of costs to be followed in the future, but they contended that the application of the new procedures were to be applied retroactively as far back as the applicable statute of limitations would permit. This resulted in the demand for reimbursement of the alleged overpayments back to and including the fiscal year 1969.

Columbia Heights does not contest the fact that they will be bound in the future by the new accounting procedures established in 1972 by the staff auditors, but they do contest the right of the defendants to apply these new procedures retroactively. Upon the filing of this suit by Columbia Heights this Court issued a restraining order temporarily enjoining the defendants from implementing its decision to withhold any portion of the $260,416 alleged to be due by Columbia Heights pending a determination of the plaintiff's motion for a preliminary and permanent injunction.

This case presents only two narrowly defined issues. First, the defendant contends that this Court is without jurisdiction to hear this case, and secondly, on the merits, the Court is presented only with the question of whether or not the accounting procedures established by the staff auditors after their 1972 audit can be retroactively applied to the accounts of Columbia Heights. Since there are no contested issues of fact involved, and since the Court has had the benefit of exhaustive and scholarly briefs prepared by counsel for both sides, together with a full transcript of the "Medicare Provider Appeal Hearing of the Blue Cross Association" conducted at Rosemont, Illinois, on February 27, 1974, pursuant to the provisions of 42 U.S.C. § 1395oo, at which hearing all interested parties were present and represented by counsel, this Court concluded

and counsel agree, that no additional evidentiary hearing is required. After due consideration of the record in this case, it is concluded first that this Court does have jurisdiction over this matter, and secondly, that the newly established accounting procedures may not be retroactively applied to the accounts of Columbia Heights.

■ All of the objections to jurisdiction now raised by the defendants have been raised and passed upon in former cases, and it is now well settled that a provider of services under the Medicare program may indeed obtain judicial review of the Secretary's decision to suspend or withhold reimbursement payments, and that this Court does have jurisdiction over such a case. This jurisdiction rests both on the basis of federal question jurisdiction and on the basis of a non-statutory review pursuant to the Administrative Procedure Act (5 U.S.C. §§ 702–706). Aquavella v. Richardson, 437 F.2d 397 (C.A.2—1971); Kingsbrook Jewish Medical Center v. Richardson, 486 F.2d 663 (C.A.2—1973) Mount Sinai Hospital of Greater Miami v. Weinberger, 376 F.Supp. 1099 (S.D.Fla. —1974).

■ On the merits of this case, both the law and the equities involved favor the plaintiff's contention that the accounting procedures implemented by the staff auditors in November of 1972 should not be applied retroactively to Columbia Heights. It must be borne in mind that it was not Columbia Heights who established or approved the accounting and reporting system used prior to 1973. Those procedures were developed and approved by the contract auditors employed by H.E.W.'s intermediary, Louisiana Hospital Service, Inc. (Blue Cross). Columbia Heights merely followed the accounting and allocation procedure established by Blue Cross. Each year, from 1966 through 1969, the reports of Columbia Heights, based upon the established procedure, were audited by the contract auditors, approved by Blue Cross, and final settlements made in accordance therewith. There is no al-

legation made that Columbia Heights has done anything wrong or that it has in any way been unjustly enriched. The only contention of defendants is that the allocation system established by Blue Cross through its contract auditors, and imposed by them upon Columbia Heights, was not the system that the new staff auditors employed by Blue Cross in 1972 think should be employed. Columbia Heights has no quarrel with the new system and would have had no quarrel with it had it been required by the auditors in 1966. The fact is that dollar and cent-wise Columbia Heights would have come out the same under either system had it been employed at the beginning of the program rather than being imposed retroactively. The difference between the two systems is that under the newly imposed system, certain patients, probably patients in the nursing home and possibly some patients in the hospital, would have been charged more individually, and Medicare would have been charged less than was the case under the old system of allocating costs of services rendered. The net amount received by Columbia Heights would have been the same under either system, with only the source of their income being different. Under the newly imposed system a smaller portion of the total cost of services rendered is recoverable by Columbia Heights from Medicare, and the remaining costs must be recovered from patients to whom services are rendered. To allow the defendants to apply this new accounting procedure retroactively would be grossly unfair to Columbia Heights because, as a practical matter, it would have no way to go back and recover these unpaid portions of their costs from ex-patients.

If Columbia Heights had made an excessive profit of $260,413 by virtue of an improper cost allocation, there would be little doubt that it would be required to repay those funds. But such was not the case. First of all there was no "improper" cost allocation on the part of Columbia Heights. They allotted their costs exactly as instructed by the defendant's auditors, and the allocation was approved each year by the defendant. Defendant now says that the allocation of costs as approved by their own intermediary and auditor was not in accordance with the requirements of the Medicare Act. Even this assertion is open to much doubt. Title 42 U.S.C. § 1395x(v)(1) directs the Secretary of H. E.W. to establish regulations for determining reasonable costs. These regulations, found in 20 CFR 405.401 et seq. establish "guidelines" which are, at very best, rather general. Section 405.402 recognizes that "cost of service" will vary from institution to institution and directs that payment is to be made on a basis of current costs of the individual provider rather than costs of a past period or a fixed negotiated rate. Section 405.402(b)(4) further provides:

> "That there be sufficient flexibility in the method of reimbursement to be used, particularly at the beginning of the program, to take account of the great differences in the present state of development of record keeping."

20 CFR 405.403 deals with apportionment of allowable costs. To say that the regulation is general in terms and confusing in content is to put it mildly. Many alternative approaches to cost allocation are contained in these "guidelines," and then, Section 405.406 provides:

> "(b) Costs reports will be required from providers on an annual basis with reporting periods based on the provider's accounting year. In the interpretation and application of the principles of reimbursement, the fiscal intermediaries will be an important source of consultative assistance to providers and will be available to deal with questions and problems on a day-to-day basis."

These fiscal intermediaries, Blue Cross, through their contract auditors, were indeed available to Columbia Heights, and

they were indeed Columbia's source of consultative assistance. In fact they devised the cost allocation plan to be used by Columbia Heights, and they audited and approved the reports each year from 1966 through 1968 based upon that cost allocation plan. The same cost allocation was then used by Columbia Heights without being questioned by anyone until late 1972. According to the testimony taken at the Medicare Provider Appeal Hearing, workshops were conducted by Blue Cross in collaboration with Louisiana Hospital Association, in which the hospital industry and the accounting industry participated, for the purpose of acquainting providers with acceptable methods of cost allocation and cost reporting. The workshops were apparently primarily conducted by contract auditors employed by Blue Cross. Thus it is obvious that the whole momentum for the use of the system employed by Columbia Heights came from H.E.W. through its agents, Blue Cross, Louisiana Hospital Service, Inc., and their own contract auditors. If there was anything wrong with the system used, (and the record is certainly not clear on that point), it was certainly not the fault of Columbia Heights, and they should not now be penalized for the mistakes, if any there were, of H.E.W. or its agents.

But the Government points to 42 U.S. C. § 1395x(v)(1)(A)(ii) which requires the Secretary's regulations to "provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive." To comply with this provision of the Act, 20 CFR 405.454(f) provides:

"*(f) Retroactive adjustment.* (1) Title XVIII of the Act provides that providers of services shall be paid amounts determined to be due, but not less often than monthly, with necessary adjustments due to previously made overpayments or underpayments.

Interim payments are made on the basis of estimated costs. Actual costs reimbursable to a provider cannot be determined until the cost reports are filed and costs are verified. Therefore, a retroactive adjustment will be made at the end of the reporting period to bring the interim payments made to the provider during the period into agreement with the reimbursable amount payable to the provider for the services rendered to program beneficiaries during that period.

"(2) In order to reimburse the provider as quickly as possible, an initial retroactive adjustment will be made as soon as the cost report is received. For this purpose, the costs will be accepted as reported—unless there are obvious errors or inconsistencies—subject to later audit. When an audit is made and the final liability of the program is determined, a final adjustment will be made.

"(3) To determine the retroactive adjustment, the amount of the provider's total allowable cost apportioned to the program for the reporting year is computed. This is the total amount of reimbursement the provider is due to receive from the program and the beneficiaries for covered services rendered during the reporting period. The total of the interim payments made by the program in the reporting year and the deductibles and co-insurance amounts receivable from beneficiaries is computed. The difference between the reimbursement due and the payments made is the amount of the retroactive adjustment."

■ A fair reading of this regulation does not justify the conclusion that it is intended to require or permit new and different basic accounting procedures to be implemented on a retroactive basis when the implementation of those procedures will result in substantial increase or decrease in the reimbursable costs to which a provider will be entitled. The

purpose of the retroactive adjustment is found in the words:

"Interim payments are made on the basis of estimated costs. Actual costs reimbursable to a provider cannot be determined until cost reports are filed and costs verified." 20 CFR § 405.-454(f).

The Act provides that the provider is to be reimbursed his estimated costs at least once a month. The report of actual costs is made on an annual basis. Thus, the purpose of this regulation is simply to bring the interim payments, made on an estimated basis to the provider, into agreement with the amount to which he is entitled based upon actual rather than estimated costs. This regulation merely takes cognizance of the fact that it would be highly unlikely for a provider to be able to estimate his costs for twelve consecutive months and end up with his estimated costs for the year exactly equalling his actual costs. A retroactive adjustment for this purpose is obviously required. Neither the Act nor the regulation contemplated or permits the rules to be changed after the game has been played.

As was said in N.L.R.B. v. Majestic Weaving Co., 355 F.2d 854, 860 (C.A.2 —1966):

"Although courts have not generally balked at allowing administrative agencies to apply a rule newly fashioned in an adjudicative proceeding to past conduct, a decision branding as 'unfair' conduct stamped 'fair' at the time a party acted, raises judicial hackles considerably more than a determination that merely brings within the agency's jurisdiction an employer previously left without . . . ..

" * * *

"And the hackles bristle still more when financial penalty is assessed for action that might well have been avoided if the agency's changed disposition had been earlier made known, or might even have been taken in ex-press reliance on the standard previously established."

There is no doubt but that the reporting procedure followed by Columbia Heights prior to 1973 was a procedure followed in express reliance on the standards previously established by the Secretary of Health, Education and Welfare through his intermediaries and agents. As stated in Pedersen v. N.L.R.B., 234 F.2d 417, 419 (C.A.2—1956):

"The rationale of these cases limiting the Board's power to act retroactively is that such retroactive action results in a species of entrapment. Persons who have relied on the Board's stated policy suddenly find themselves penalized for their conduct. In such a situation the unfairness and hardship to the individual penalized justify a requirement that the Board point to clear statutory authority for its action."

There is no clear statutory authority for the retroactive application of the new accounting procedures adopted by Blue Cross in late 1972. Neither 42 U.S.C. § 1395x(v)(1)(A)(ii) which requires the Secretary to provide by regulation for retroactive corrective adjustments nor the regulation promulgated pursuant thereto, 20 CFR § 405.454(f), are "clear statutory authority" for the type of retroactive action taken by the Secretary in this case. To allow such retroactive action under the circumstances of this case would be grossly unfair, terribly unjust, and not justified by a fair reading of the statute and regulation involved. For these reasons, the motion of the defendants for summary judgment will be denied, and on the merits, judgment will be entered in favor of the plaintiff as prayed for, permanently enjoining the defendants, or any of them, from in any way attempting to implement any plan or procedure designed to recover from the plaintiff the alleged overpayments received by the plaintiff under the Medicare program for the years 1969 through 1972. Counsel for the plaintiff shall present to the Court a proposed judgment for entry herein.