Bazelon, Chief Judge, concurred and filed opinion.

NEW JERSEY CHAPTER INCORPORATED OF the AMERICAN PHYSICAL THERAPY ASSOCIATION, INC., Appellant,

v.

The PRUDENTIAL LIFE INSURANCE COMPANY OF AMERICA et al., Appellee.

No. 72–1789.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 3, 1973.

Decided Sept. 6, 1974.

As Amended Oct. 3, 1974.

Rehearing Denied Oct. 17, 1974.

Alvin Ezrin, Nutley, N. J., with whom James A. Hourihan, Washington, D. C., were on the brief, for appellant.

Robert S. Greenspan, Atty. Dept. of Justice, of the bar of the Court of Appeals of New York pro hac vice by special leave of court, with whom Harold H. Titus, Jr., U. S. Atty., Leonard Schaitman and Robert M. Feinson, Attys., Dept. of Justice, were on the brief, for appellee.

Before BAZELON, Chief Judge, ROBB, Circuit Judge, and ROBERT VAN PELT,* United States Senior District Judge for the District of Nebraska.

ROBB, Circuit Judge:

This action arises under the Health Insurance for the Aged Act, 42 U.S.C. §§ 1395 et seq., commonly known as the Medicare Act.

The Secretary of Health, Education and Welfare is charged with the administration of the Act, and he has delegated this authority to the Commissioner of the Social Security Administration. Within the Social Security Administration the Bureau of Health Insurance has the primary responsibility for administering the Act. The statutory scheme "provides basic protection against the costs of hospital and related post-hospital services . . . for individuals who are age 65 or over" and are entitled to benefits under the Act. 42 U.S.C. § 1395c. Beneficiaries are entitled to receive services covered by the Act from hospitals, extended care facilities or home health agencies which are qualified to participate in the program. These institutions are called "providers of services" or providers. 42 U.S.C. § 1395x(u); 42 U.S.C. § 1395cc. They are entitled to be reinbursed for the reasonable cost of the services they provide to beneficiaries. 42 U.S.C. § 1395f. Under the Act providers may elect to have payments to them made through a private organization and the Secretary is authorized to make contractual arrangements with such an organization to act as the fiscal intermediary between the providers and the government. When this is done, the intermediary determines the amount and reasonableness of the payments to be made to providers. 42 U.S.C. § 1395h.

The appellant association, plaintiff in the District Court, is an association of physical therapists who are licensed to practice physical therapy in the State of New Jersey. Many of the association's members are private practitioners of physical therapy who have contracted to supply services to providers under the Act. Prudential Insurance Company, a defendant in the District Court, was selected by many of the qualified extended care facilities in New Jersey to serve as their fiscal intermediary, and Prudential has been acting in that capacity.

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

In August 1969 the Bureau of Health Insurance issued Intermediary Letter No. 393 (IL–393). This letter, captioned "SUBJECT: Identifying unreasonable costs—application of the 'prudent buyer' concept" stated in part:

Several cases have come to our attention that suggest that it may be helpful to provide some reminders on a number of areas that involve identifying reasonable costs. This letter outlines some of the steps which intermediaries should be taking to protect the program against making reimbursement for amounts which are in excess of what a prudent and cost-conscious buyer would pay for a given item or service.

\* \* \* \* \* \*

It is not expected, for example, that reimbursement will be based on costs arising from a provider paying at individual rates for physical therapy which is provided by a single therapist to groups of patients simultaneously.

In October 1971 the Bureau sent to all intermediaries a draft of a proposed intermediary letter (IL–71). This letter stated in part:

This letter establishes guidelines for intermediaries to follow in determining the reasonableness of the costs a provider incurs in furnishing physical, occupational, inhalation or speech therapy to program beneficiaries under arrangements with self-employed therapists. The basic measure of reasonable cost for the service of non-employee therapists is the amount of salary or wages that is paid to employee therapists in the area performing similar functions and is intended to protect the program against reimbursing for costs in excess of what a prudent and cost-conscious buyer would pay for the services. This amount is adjusted to take into account the normal fringe benefits of full-time employees of the provider, as well as reasonable expenses incurred by a part-time nonemployee therapist.

Where applicable, these rules apply to other health specialists providing services under arrangements.

I. *Prudent Buyer Concept*

Providers are expected to be prudent and cost-conscious purchasers of arranged-for therapy services. In applying this concept, the following situations are presumptively indicative of unreasonable costs: (1) costs incurred for the services of an independent contractor are in excess of what would have been the provider's costs of furnishing the same services had it employed a therapist . . . .

A copy of the proposed IL–71 was sent to the American Physical Therapy Association on October 27, 1971 with a request that the association submit its written comments or recommendations no later than November 15, 1971. Proposed Intermediary Letter No. 71 has never been made final.

On November 23, 1971 Prudential sent to "MEDICARE PARTICIPATING EXTENDED CARE FACILITIES" a letter on the subject of "REIMBURSEMENT FOR SERVICES OF NON–SALARIED THERAPISTS." The letter stated in part:

Public Law 89–97 provides that reimbursement to providers for covered services rendered to Medicare beneficiaries shall be on the basis of reasonable cost. In fulfilling our responsibility as an intermediary, we must identify unreasonable costs and take steps to protect the program from reimbursing for costs in excess of those which a prudent and cost-conscious buyer would incur.

The implementation of this policy for physical, speech, occupational, and inhalation therapy services rendered by non-salaried therapists in an institutional setting involves two major considerations. They are:

1. Payment for the cost of these services shall not exceed an amount equal to the salary which would have been payable if the services

had been performed by an employee, plus the cost of such other reasonable expenses as may be incurred by independently contracting therapists (e. g., travel time, salaries of aides).

2. Payment for the cost of these services will be based upon the reasonable time spent in performing them.

In order that this policy can be effectively carried out, it will be necessary that accurate records of the therapists' activities be maintained and made available to the intermediary. Accordingly, effective January 1, 1972, the provider will be responsible for the maintenance of a daily log showing the names of all patients treated and the total daily time spent by the therapist including time spent in the supervision of aides and/or non-qualified therapists). . . .

In the absence of a properly maintained log, no Medicare reimbursement for these therapy services will be allowed.

\* \* \* \* \* \*

Because allowable reimbursement for the services of therapists is to be based on a salary equivalent, we should know the details of your arrangements with contracting therapists. *Our measurement* of the reasonableness of the cost of these services will be based on hourly rates of pay for both the therapists and their aides, if any. . . .

In order to avoid the possibility of having a portion of your therapy costs disallowed as excessive, we strongly recommend that you negotiate arrangements with your non-salaried therapists to provide for their compensation on a time basis and that the results of such negotiations be submitted to us for review well in advance of the effective date of January 1, 1972. [emphasis in original.]

In a letter to providers dated April 12, 1972 Prudential clarified the intent of its letter of November 23. The letter of April 12, 1972 stated in part:

As you know, Intermediary Letter 393 issued on August 1969 [sic], and Provider Reimbursement Manual section 2103, set out the concept of the prudent buyer; that is, a provider is a prudent buyer if it not only refuses to pay more than the going price for an item or service, but also seeks to economize by minimizing costs. The purpose of these program statements is to assist all parties in identifying reasonable costs and to help prevent incurring unreasonable costs.

It should be noted that our previous letter indicated the establishment of guideline criteria for evaluating the reasonableness of the cost of therapy services and was not intended as a maximum for payment. Providers incurring costs in excess of our guidelines will be given an opportunity to show that they were acting as prudent buyers when incurring the cost. However, the burden of proof of the reasonableness of the costs does lie with the provider.

In March 1972 the plaintiff association commenced this action against Prudential, the Secretary of HEW, and various HEW officials. The action sought: (1) a preliminary injunction, enjoining the defendants from effectuating the standards and guidelines for reimbursement of non-salaried physical therapists as expressed in the Prudential letter and IL–71; (2) a declaratory judgment that the Prudential letter and IL–71 "are null and void"; (3) that Prudential be required retroactively to adjust any reimbursements made pursuant to its salary equivalent standard so that physical therapists who were paid in accordance with that standard would be paid in accordance with the standard prevailing prior to January 1, 1972; and (4) that Prudential be required to retract its letter because of non-compliance with the rule-making procedures of the Administrative Procedure Act.

**504**

Citing Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), the District Court dismissed the complaint on the ground that the interests of the plaintiff were not "arguably within the zone of interests to be protected" by the Health Insurance for the Aged Act. The court considered that although some of the plaintiff's members might be economically affected by the Prudential letter, the plaintiff's interest was "too remote to the interests protected under the Act".

On this appeal the government argues (1) plaintiff's complaint does not state a meritorious claim for relief; (2) the District Court correctly held that plaintiff did not have standing to sue; and (3) determination of the amounts payable to providers of services is not subject to judicial review. We turn first to the government's second and third arguments.

The government says correctly that the Act was expressly designed for the protection of elderly citizens who require medical care, and those persons of course have standing to vindicate their rights under the Act. Furthermore, since the Act assures a provider of reimbursement for the reasonable costs incurred by him, a provider would seem to have an interest within the zone protected by the statute. Plaintiff's members on the other hand are not subject to regulation under the Act and their rights are derived from their contractual arrangements with providers. There is nothing in the Medicare Act or its legislative history, says the government, which indicates any concern by Congress to protect the interests of persons such as plaintiff's members who are only indirectly affected by the operation of the Medicare program. From all this the government concludes that the plaintiff and its members have no standing to sue.

In support of its argument that the plaintiff's claims are not subject to judicial review, the government directs our attention to the provisions of the Medicare Act, 42 U.S.C. § 1395ff, which provide for judicial review of (1) a determination of whether an individual is entitled to benefits and a determination of the amount of benefits, and (2) a determination that an institution is not a provider of services or that its agreement to provide services should be terminated. The government finds it significant that no provision is made for judicial review of the award of compensation to providers of services; and the government reasons that since decisions on this matter are not subject to judicial review it follows a fortiori that decisions on the amounts due to contractors, who are indirectly affected by the Medicare program, are also not subject to judicial review.

■ There is much force in the government's arguments. As this court has said however recent decisions of the Supreme Court "have made the standing obstacle to judicial review a shadow of its former self, and have for all practical purposes deprived it of meaningful vitality." National Automatic Laundry & Cleaning Council v. Shultz, 143 U.S. App.D.C. 274, 278, 443 F.2d 689, 693 (1971). Standing need not be founded on a rock; a pebble or even a cobweb may do. Moreover, only a showing of clear and convincing evidence of legislative intent will justify a court in precluding access to judicial review. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). Here, we think plaintiff's standing and the reviewability of plaintiff's claims at least present close and difficult questions; but we shall not pause to wrestle with these problems, since we conclude that in any event the defendants must prevail on the merits.

■■ The Act explicitly limits the reimbursement of "providers" to the "reasonable cost" of the services rendered to Medicare beneficiaries. 42 U. S.C. § 1395f(b). As a fiscal intermediary making reimbursement to providers, therefore, Prudential is bound to apply

the reasonable cost standard to claims submitted by providers. In fulfillment of its obligation, and in accord with HEW's "prudent buyer" concept, Prudential issued its letter of November 23, 1971. We think this letter was a reasonable and proper attempt to outline a rational method for determining "reasonable costs". We think also that Prudential's use of guidelines of this type is within the authority conferred by the Act and HEW's regulations.

Although the plaintiff contends that the Prudential letter sets a "ceiling" on costs and thereby permits Prudential to disallow "reasonable costs", it is plain to us that Prudential will continue to allow all costs that are reasonable. Prudential's letter of April 12, 1972 explicitly stated:

> Providers incurring costs in excess of our guidelines will be given an opportunity to show that they were acting as prudent buyers when incurring the cost. However, the burden of proof of the reasonableness of the costs does lie with the provider.

Thus, the effect of the guidelines is to provide for automatic payment of physical therapy costs when they do not exceed the adjusted rate charged by salaried therapists; for the provider incurring such costs has clearly acted as a "prudent buyer". If the costs exceed these amounts, however, Prudential requires the provider to demonstrate that the additional costs are reasonable. In other words the guidelines establish a level of costs which Prudential will pay without additional proof of their reasonableness.

■■■■ The plaintiff contends that Prudential promulgated a "regulation" without the notice and opportunity for comment required by the Administrative Procedure Act. 5 U.S.C. § 553. We think the argument has no merit. Without intimating that Prudential is an "agency" within the meaning of the Act, 5 U.S.C. § 551(1), we hold that Prudential's letter was not a regulation but was merely an explanation or interpretation of the reasonable cost limitation found in the Medicare Act. *Cf.* 5 U.S.C. § 553(b)(A).[1]

The *judgment is*

Affirmed.

BAZELON, Chief Judge:

I concur in the court's opinion. I cannot agree, however, with the suggestion that the current law on standing and reviewability has gone too far or that the law, as applied in this case, presents "close and difficult questions." *See* Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1969).

1. Plaintiff's complaint was filed March 22, 1972. On October 30, 1972, by amendment to the Social Security Act, Congress provided that the salary equivalent standard should apply to payments for physical therapy services. P.L. No. 92–603, 86 Stat. 1445; 42 U.S.C. § 1395x(v)(5). The plaintiff suggests that this action demonstrates that Prudential's guidelines were previously unauthorized by the Act. We do not agree. "'Public policy requires that agencies feel free to ask legislation which will terminate or avoid adverse contentions and litigations.'" FTC v. Dean Foods Co., 384 U.S. 597, 610, 86 S.Ct. 1738, 1746, 16 L.Ed.2d 802 (1966), *citing* Wong Yang Sung v. McGrath, 339 U.S. 33, 47, 70 S.Ct. 445, 94 L.Ed. 616 (1950).