"This is a Medicare provider case, before the court on defendant’s motion for summary judgment and plaintiffs opposition thereto. The question in this case is which of two accounting methods should have been used to allocate employee fringe benefit costs to plaintiffs fiscal year 1967 Medicare program. For reasons which follow, we agree with defendant that the 'composite’ fringe benefit rate originally applied by plaintiff attributed á disproportionate amount of fringe benefit costs to the Medicare program and that retroactive adjustment to a 'differentiated’ fringe benefit rate (an adjustment made by the intermediary and affirmed by a provider appeal panel) must be sustained.
"Plaintiff, Duke University (the University), is a private educational institution which operates the Duke University Medical Center (the Medical Center). During the period at issue, June 1966 through June 30, 1967 (plaintiffs fiscal year 1967), the Medical Center was a voluntary general short-term care facility and a participating 'provider’ of Medicare program services under 42 U.S.C. § 1395x(u) (1970). One of the Medical Center’s claimed reimbursable costs was that portion of employee fringe benefits attributable to the Medicare program. In allocating these costs’, the Medical Center used a 'composite’ rate which had been established for the University as a whole and which was computed by figuring in the total payroll costs and fringe benefit package of all other University departments as well as the Medical Center.
"The Medical Center filed its cost report in April 1968. On May 20, 1968, Blue Cross and Blue Shield of North Carolina (the local delegee of the Blue Cross Association, the fiscal intermediary) made a preliminary settlement following a desk audit of the report. Final settlement was delayed, and, in 1971, the intermediary notified the Medical Center that the University-wide composite fringe benefit rate was not an acceptable method of establishing the Medicare portion of employee fringe benefits. Since plaintiff had apparently not retained records to establish *414 the actual fringe benefits paid to Medical Center employees, the intermediary allowed plaintiff to use another approximation. The fringe benefit rate acceptable to the intermediary required a four-part, 'differentiated,’ rate allocation which took into account the University’s four major fringe benefit packages applicable to four different classes of University employees (faculty and staff, biweekly employees, student employees, and hospital staff). The differentiated rate resulted in a disallowance of $26,592 of plaintiffs claimed reimbursable costs for fiscal year 1967.
"Plaintiff next appealed to the Blue Cross Association Provider Appeal Panel which, after a hearing, unanimously affirmed the intermediary’s adjustment. In May 1976, plaintiff filed the instant suit in this court. Though plaintiff has been using the four-part differentiated fringe benefit rate since November 1972, its position is that it should not be required to use the differentiated rate for the earlier years. Plaintiff seeks $26,592[1] in Medicare benefits for its fisal year 1967 which it had claimed under its 'composite’ rate and which were disallowed by subsequent adjustment to the 'differentiated’ rate.
"Defendant moves for summary judgment, relying on the pleadings, its brief and exhibits, and the administrative record. Defendant argues it is undisputed that the 'composite’ rate used by plaintiff did not produce accurate results for any one segment of the University and that it, in fact, allocated a disproportionate share of University employee fringe benefit costs to the Medical Center and passed them on to the Medicare program. Defendant asserts that, because it charged non-Medicare costs to the Medicare program in violation of the statutory provisions and Medicare regulations,[2] the composite rate is a clearly unacceptable method of allocation. Defendant argues that this court must sustain the retroactive adjustment applied by the provider appeal panel.
*415 "Plaintiff asserts that (1) there is no administrative record for the court to rely on in this case, but merely a series of informal discussions between the University and the Provider Appeal Panel, (2) the 'composite’ rate which plaintiff had originally used is a reasonable and proper method of allocation, and in any event, (3) in this case, it would be so unfair to apply the change in allocation method retroactively that defendant should be barred from making such an adjustment. Plaintiff also asserts that there are material facts in dispute. Plaintiff seeks a trial de novo in this court and maintains that this case is not appropriate for summary resolution.
"This court has had sufficient experience with Medicare provider cases that it is able to dispose of plaintiffs points with some brevity. The legal questions pertinent to the instant case have already been resolved and, as applied to the undisputed material facts here, lead us to hold for defendant.
"Plaintiffs first contention, that there is no administrative record for this court to consider (despite the fact that there has been an appeal to the Blue Cross Association Provider Appeal Panel) overlooks our prior cases which have outlined the nature of such administrative proceedings. We have held that an administrative appeal to the Provider Appeal Panel is compulsory;[3] that proceedings before the Panel comport with due process;[4] and that our scope of review of those proceedings is very narrow.[5] It is, thus, well established that the hearing before the Provider Appeal Panel is an administrative proceeding and does produce an administrative record which this court may consider.
"Plaintiffs second point, that its 'composite’ I fringe benefit rate is a reasonable and proper method of allocation, was fully considered by the Provider Appeal Panel. Plaintiffs contention is that, given the inexactness *416 of any accounting system which uses approximations rather than actual cost, the choice of how far to carry the refinements so as to approach actual cost is a matter of judgment and no single method is proper. The Provider Appeal Panel (with knowledge that, of some nine other hospital-university complexes which receive Medicare grants, not one of them used an accounting system such as plaintiffs) was not persuaded. It was the Panel’s finding that, notwithstanding the disparate degrees of sophistication in cost accounting techniques possessed by providers in the early days of the Medicare program:
The composite rate used by [plaintiff] is subject to the rather serious criticism that the relative mix of salary levels between the hospital and university is not the same in that the hospital employs proportionately more unskilled and semiskilled workers, and, thus, the salary and the fringe benefit levels of hospital employees are below the levels of the rest of the university. As a result, the use of a composite rate produces an over allocation of fringe benefits to the hospital. If the Provider were permitted to use a composite rate the result would be that the Medicare Program would be paying a portion of the compensation of university employees not engaged in patient care activities. The [intermediary’s] adjustment requiring the hospital to develop a differentiated fringe benefit rate which recognizes that lower paid employees receive fewer fringe benefits was a reasonable compromise under the circiimstciiiccs •
We cannot say that the Panel’s conclusion in this instance is arbitrary, capricious, or unsupported by substantial evidence. We therefore defer to the determination made by the administrative tribunal.
"Plaintiffs third, and perhaps most compelling, argument is that it is unfair to make a retroactive adjustment in the circumstances of this case. Plaintiff urges that the Medical Center was an integral part of the University and used accounting methods devised for University-wide application. Plaintiff maintains that, in 1963, the Army Audit Agency agreed to accept the composite rate for Department of Defense cost-type research and development contracts, so long as it was applied University-wide. The University has had since then (and continues to have) a substantial number of Government contracts and grants, and it applied the 'composite’ rate uniformly to each (at least until 1972). Plaintiff states that, by the time it *417 became aware that the composite rate was unacceptable for Medicare allocations, all of its other governmental contracts for its FY 1967 had been finally settled and could not be reopened. If those other contracts could have been reopened and, had the new 'differentiated’ rate been applied to them, plaintiff claims that it would have been entitled to additional reimbursement in the amount of $42,785 (more than offsetting the $26,592 disallowed by the Medicare program). That is, just as plaintiffs composite rate over-allocated employee fringe benefit costs to the Medicare program, it 'under-allocated’ costs to other governmental programs.
"Though we are not unsympathetic to plaintiffs unfortunate situation, we cannot find the ingredients sufficient to fashion a theory whereby plaintiff might recover in this case. At no time was a final Medicare settlement ever made under plaintiffs original, composite, method —instead, final settlement for FY 1967 (plaintiffs first year as a Medicare provider) was delayed and its composite rate never passed a final Medicare audit. Plaintiffs use of the composite rate was in no way induced by the Department of Health, Education and Welfare or by any fiscal intermediary or auditor in the Medicare program — instead, it was a method which plaintiff had earlier elected to use because of its simplicity and which had previously met with the approval of another Government agency. In all these respects, the case at hand differs from Columbia Heights Nursing Home and Hospital, Inc. v. Weinberger, 380 F.Supp. 1066 (M.D.La. 1974).
"In the instant case, the Provider Appeal Panel found that the University was not compelled to use the composite rate but chose to use it because it was easy to apply. The Panel concluded, on the facts of this case, that 'there is nothing inherently unfair in requiring a provider to use the most sophisticated method of allocating costs which a provider’s recordkeeping will permit tb make certain that the Congressional mandate that the Medicare Program pay only its share of a hospital’s costs is observed.’
"The Medicare regulations unambiguously reserve the effective determination of reimbursable costs to the time of final audit and expressly provide that retroactive adjustments may be made. 20 C.F.R. § 405.454(f). See Ulman v. United States, 214 Ct.Cl. 308, 314-17, 558 F.2d 1, 4-5 (1977). We cannot say that the Panel erred in making the *418 retroactive adjustment to plaintiffs accounting methods in the instant case.
"Finally, plaintiff contends that there are material facts in dispute. We find, on the record before us that the disputed facts asserted by plaintiff were either resolved by the Provider Appeal Panel or are not material. There is nothing, then, standing in the way of summary resolution of this case.[6]
"IT IS THEREFORE ORDERED, upon consideration of the pleadings, briefs (including all supplemental briefs), exhibits, and record, without oral argument,[7] that defendant’s motion for summary judgment is granted and plaintiffs petition is dismissed.”

 In its petition, plaintiff prayed for judgment in the amount of $31,146. Subsequent calculations by plaintiff indicated that the amount at issue is $26,592 and plaintiff, accordingly, now seeks judgment in that amount.

 Medicare reimbursement must approximate actual costs so that the costs with respect to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs. ... 42 U.S.C. § 1395x(v) (1970). See also 20 C.F.R. § 405.402(a); 20 C.F.R. § 405.451. All citations are to the 1976 issue of C.F.R. as the relevant sections have not changed in any way material to this case since 1966.

 Ulman v. United States, 214 Ct.Cl. 308, 558 F.2d 1 (1977); Goldstein v. United States, 201 Ct.Cl. 888, cert. denied, 414 U.S. 974 (1973). Cf. Gosman v. United States, 215 Ct.Cl. 617, 621, 573 F.2d 31, 34 (1978); Overlook Nursing Home v. United States, 214 Ct.Cl. 60, 64, 556 F.2d 500, 501 (1977). (Suspending Medicare Provider cases pending conclusion of the administrative proceedings.)

 Overlook Nursing Home v. United States, 214 Ct.Cl. 60, 556 F.2d 500 (1977).

 ". . . [O]ur scope of review in this type of case is limited; the decisions of the Hearing Panel are to be examined for compliance with the Constitution, statutory provisions, and regulations having the force and effect of law, as well as for the taint of arbitrariness, capriciousness, or lack of support in substantial evidence.”
Gosman, supra, 215 Ct.Cl. at 621-22, 573 F.2d at 34, and cases there cited.

 Defendant cites Califano v. Sanders, 430 U.S. 99 (1977) for the proposition that this court lacks jurisdiction over provider reimbursement cases. We read Sanders as establishing that the Administrative Procedure Act (APA) does not provide an independent basis of jurisdiction; our jurisdiction over these cases does not depend upon the APA. See Gosman, supra, 215 Ct.Cl. at 622, 573 F.2d at 34, and cases there cited.

 Plaintiffs motion for leave to file its supplemental brief is granted. Defendant’s motion to file a responsive supplemental brief is granted. Plaintiffs request for oral argument is denied.