**FAIRFAX NURSING CENTER, INC., Appellee,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education & Welfare, Appellant.**

No. 77–2136.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1978.

Decided Jan. 15, 1979.

Richard A. Olderman, Atty., Dept. of Justice, Washington, D. C. (Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., William B. Cummings, U. S. Atty., Alexandria, Va., Robert E. Kopp and Judith S. Feigin, Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., on brief) for appellant.

Joel M. Hamme, Washington, D. C. (Thomas C. Fox, Pierson, Ball & Dowd, Washington, D. C., on brief), for appellée.

Before BUTZNER and HALL, Circuit Judges, and ROBERT F. CHAPMAN, District Judge for the District of South Carolina, sitting by designation.

BUTZNER, Circuit Judge:

The Secretary of Health, Education, and Welfare appeals from the district court's reversal of an order of the Provider Reimbursement Review Board which allowed the Secretary to recoup the difference between accelerated depreciation payments previously made to Fairfax Nursing Center, Inc., and the amount Fairfax would have received if depreciation had been computed on a straight-line basis. Influenced largely by decisions that have sustained the Secretary on this issue,[1] we reverse.

Title XVIII of the Social Security Act[2] established a federally-funded health insurance program for the elderly popularly known as Medicare. From 1967 until July 31, 1975, Fairfax Nursing Center, Inc., provided skilled nursing services to beneficiaries of the Medicare program. Its agree-

---

1. *Adams Nursing Home of Williamstown, Inc. v. Mathews,* 548 F.2d 1077 (1st Cir. 1977); *Springdale Convalescent Center v. Mathews,* 545 F.2d 943 (5th Cir. 1977); *Summit Nursing Home v. United States,* 572 F.2d 737 (Ct.Cl. 1978); *contra Hutchison Nursing Home, Inc. v. Burns,* 236 N.W.2d 312 (Iowa 1975).

2. 42 U.S.C. §§ 1395 *et seq.*

ment with the Secretary of Health, Education, and Welfare, as well as the terms of the Act, 42 U.S.C. §§ 1395f(b), 1395g, and 1395x(v)(1)(A), directed the Secretary to reimburse Fairfax for the "reasonable cost" of these services, including the cost of depreciation of capital assets used for Medicare patients. Section 1395x(v)(1)(A) requires the Secretary to issue regulations establishing permissible methods of cost calculation as well as providing for retroactive corrective adjustments in appropriate cases. Reimbursement of reasonable costs to Fairfax was administered by Mutual of Omaha Insurance Company, an intermediary acting on behalf of the Secretary.

Fairfax had elected to have its reimbursement payments computed by calculating the depreciation of its capital assets on an accelerated basis rather than by a straight-line method, pursuant to regulations promulgated by the Secretary in 1966.[3] In comparison with straight-line depreciation, which assumes a linear rate of decline in asset value and results in identical reimbursement payments in each year of an asset's expected life, accelerated depreciation assumes a more rapid rate of decline in value in the early years and therefore produces large payments in the early years and small payments in the later years of the asset's life.

On August 1, 1970, the Secretary promulgated new regulations[4] precluding accelerated depreciation payments for newly acquired assets and for new providers entering the program after that date. These regulations also authorized the recapture, upon a provider's withdrawal from the Medicare program, of any difference between previously claimed accelerated depreciation and the amount which would have been paid on a straight-line basis. 20 C.F.R. § 405.415(d)(3) (1977).[5]

Fairfax voluntarily withdrew from the Medicare program on July 31, 1975. On March 19, 1976, Mutual of Omaha notified Fairfax that the depreciation portion of its allowable costs for the periods ending December 31, 1967, through July 31, 1975, had been recomputed and that $39,087, the excess of accelerated over straight-line depreciation, would be deducted from the amount owed to Fairfax for the final accounting period. After Fairfax's protests were denied by the Provider Reimbursement Review Board and the Secretary declined to affirm, reverse, or modify the Board's decision, Fairfax brought suit in the district court.[6] The district court granted Fairfax's motion for summary judgment, reasoning that, as applied to periods before its effective date, 20 C.F.R. § 405.415(d)(3) was beyond the Secretary's statutory authority and violated the constitutional guarantee of due process.

Fairfax advances a number of arguments in support of the district court's judgment. The principal ones can be grouped as follows: I, the Secretary did not comply with the Medicare Act; II, he violated the Administrative Procedure Act by making a substantive rule under the guise of a practice manual; and III, he deprived Fairfax of its property without due process of law.

## I

Fairfax contends that as applied, the regulation exceeds the Secretary's au-

---

3. 31 Fed.Reg. 14808 (Nov. 22, 1966).

4. 35 Fed.Reg. 12330 (Aug. 1, 1970).

5. 20 C.F.R. § 405.415(d)(3) provides in part:
   When a provider who has used an accelerated method of depreciation with respect to any of its assets terminates participation in the program, . . . the excess of reimbursable cost determined by using accelerated depreciation methods and paid under the program over the reimbursable cost which would have been determined and paid under the program by using the straight-line meth-

od of depreciation will be recovered as an offset to current reimbursement due or, if the provider has terminated participation in the program, as an overpayment. In this determination of excess payment, recognition will be given to the effects the adjustment to straight-line depreciation would have on the return on equity capital and on the allowance in lieu of specific recognition of other costs in the respective years.

6. Jurisdiction is based on 42 U.S.C. § 1395oo (f)(1).

thority under the Medicare Act. Fairfax directs our attention to 42 U.S.C. § 1395x(v)(1)(A)(ii), which allows the Secretary to make

suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive.

Fairfax argues that this provision does not authorize retroactive adjustments beyond the current fiscal period.

We find Fairfax's argument untenable. The Medicare Act calls for two distinct types of retroactive adjustments: (1) adjustments to bring a provider's interim payments into agreement with the audit results for a given fiscal period, which are required by § 1395g, and (2) adjustments "to correct flaws in the aggregate reimbursement to which a provider is entitled due to an erroneous method of determining reimbursable cost," dictated by § 1395x(v). *Kingsbrook Jewish Medical Center v. Richardson,* 486 F.2d 663, 669 (2d Cir. 1973). The regulation involved in this litigation implements the latter provision and therefore is not limited to any specific fiscal period.

Fairfax also directs our attention to a regulation proposed by the Commissioner of Social Security in 1975 which dealt with the question of retroactivity when there is a change in the method used to determine a provider's "reasonable costs." 40 Fed.Reg. 26535 (June 24, 1975). The regulation would have made such changes effective "in the provider's reporting period that begins after the date of [the] change."

We decline to draw any conclusions from this proposed regulation. Regulations which are proposed but not subsequently promulgated indicate little about the agency's statutory authority. *Cf. New Jersey Chapter, Inc. of APTA, Inc. v. Prudential Life Insurance Co.,* 164 U.S.App.D.C. 40, 45

n. 1, 502 F.2d 500, 505 n. 1 (1974). Nor do we find anything in the legislative history of the Medicare Act proscribing the Secretary's retroactive recovery of accelerated depreciation.

Fairfax also argues that under § 1395x(v)(1)(A)(ii), the Secretary was obliged to make explicit findings that accelerated depreciation generally leads to excessive reimbursements.

■ The district court correctly rejected this argument. Neither the Administrative Procedure Act, 5 U.S.C. § 553(b)(3), nor the Medicare statute mandates formal findings or justifications in a Notice of Proposed Rulemaking. *See Summit Nursing Home, Inc. v. United States,* 572 F.2d 737, 741–42 (Ct.Cl.1978); *E. I. duPont de Nemours & Co. v. Train,* 541 F.2d 1018, 1026 (4th Cir. 1976). The regulation itself is a determination that accelerated depreciation exaggerates the true costs of providing services. *Adams Nursing Home of Williamstown, Inc. v. Mathews,* 548 F.2d 1077, 1082 (1st Cir. 1977). No contrary determination may be found in the provisions allowing accelerated depreciation to continue beyond August 1, 1970, in special circumstances.[7]

■ As a participant in an ongoing regulated program, Fairfax could have benefited from retroactive upward adjustments in reasonable cost payments. *See, e. g., Kingsbrook Jewish Medical Center v. Richardson,* 486 F.2d at 670. It has no grounds to complain upon encountering periodic downward adjustments, unless those adjustments produced less than a "reasonable cost" reimbursement. *Accord, Hazelwood Chronic & Convalescent Hospital, Inc. v. Weinberger,* 543 F.2d 703, 708 (9th Cir. 1976), vacated on jurisdictional grounds, 430 U.S. 952, 97 S.Ct. 1595, 51 L.Ed.2d 801 (1977). *See Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15–20, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). Fairfax suggests that the government had the burden of estab-

7. 20 C.F.R. § 405.415(a)(3) allows accelerated depreciation for (1) assets which were placed on that basis before August 1, 1970; (2) assets acquired before August 1, 1970, where no election to use straight-line depreciation had been made by that date; (3) assets the construction of which began before February 5, 1970; and (4) assets for which a construction, acquisition, or permanent financing contract was entered into before February 5, 1970.

lishing that payments to the nursing home had exceeded "reasonable cost." This is not correct. The judicial presumption of legality of administrative action places the burden on Fairfax to establish the contrary proposition. *Springdale Convalescent Center v. Mathews*, 545 F.2d 943, 955 (5th Cir. 1977); *see Campaign Clean Water, Inc. v. Train*, 489 F.2d 492, 501 (4th Cir. 1973), vacated and remanded on other grounds, 420 U.S. 136, 95 S.Ct. 847, 43 L.Ed.2d 82 (1975).

## II

Fairfax argues that § 405.415(d)(3) is not retroactive on its face and was made retroactive only by the 1972 addition of § 136 to the Provider Reimbursement Manual. Section 136.2 states that the excess depreciation payments for all accounting periods, including those prior to 1970, will be recovered from the provider when it terminates participation in the program. Providers who withdrew prior to 1970 were exempted. Since the latter provision was not promulgated in accordance with the notice and comment procedures of the Administrative Procedure Act, Fairfax contends that § 405.415(d)(3) may not be applied retroactively.

The Secretary is not free to promulgate regulations and then change their meaning by "clarifications" or "interpretations" issued without formal notice and comment. To do so would frustrate the policies of fair notice and comment in the Administrative Procedure Act. However, § 136.2 raises no such problem. The language of § 405.415(d)(3) neither mentions nor necessarily mandates retroactivity. The regulation might be construed to apply only to accelerated depreciation payments made on or after August 1, 1970. But an equally plausible reading is that the regulation was intended to effect recapture of *any* net excess of accelerated over straight-line depreciation upon termination after 1970 of a provider's participation in the program. This interpretation is consistent with 42

U.S.C. § 1395x(v)(1)(A)(ii) which, as we noted in Part I, specifically authorizes the Secretary to make retroactive adjustments.

Although Fairfax insists that the manual creates a new substantive rule, we need not analyze the question in terms of the difference between substantive and interpretative rules. *See Gosman v. United States*, 573 F.2d 31, 39 (Ct.Cl.1978). The regulation can readily be understood as authorizing retroactive recapture of depreciation payments, and § 136 of the manual merely clarifies it. The manual expressly provides that it does not have the force of regulations. Therefore, it need not have been promulgated in accordance with the standard notice and comment procedure. 5 U.S.C. § 553(b)(3), (B). *See New Jersey Chapter, Inc. of APTA, Inc. v. Prudential Life Insurance Co.*, 164 U.S.App.D.C. 40, 45, 502 F.2d 500, 505 (1974). An agency's interpretation of its own regulations should be accepted by the courts unless it is shown to be unreasonable or inconsistent with statutory authority. *United States v. Davison Fuel & Dock Co.*, 371 F.2d 705, 714 (4th Cir. 1967); *cf. Udall v. Tallman*, 380 U.S. 1, 4, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Withdrawal from the program before a provider's assets are fully depreciated introduces a new factor into the calculation of reasonable costs. Therefore, full implementation of the recapture policy of § 405.415(d)(3) requires reaching all payments of accelerated depreciation to providers who withdraw after 1970.

## III

Finally, Fairfax contends that retroactive application of § 405.415(d)(3) violated its fifth amendment right to due process of law. The district court agreed, citing *South Windsor Convalescent Home, Inc. v. Weinberger*, 403 F.Supp. 515 (D.Conn.1975), rev'd on jurisdictional grounds, 541 F.2d 910 (2d Cir. 1976); and *Columbia Heights Nursing Home & Hospital, Inc. v. Weinberger*, 380 F.Supp. 1066 (M.D.La.1974).[8]

---

**8.** The Secretary correctly points out that neither of these decisions was endorsed by a court of appeals. *Columbia Heights* has been superseded by *Springdale Convalescent Center v.*

*Mathews*, 545 F.2d 943 (5th Cir. 1977), which upheld retroactive application of § 405.-415(d)(3).

We believe the correct analysis of the constitutional issue is that of the First Circuit in *Adams Nursing Home of Williamstown, Inc. v. Mathews*, 548 F.2d at 1080–81. Writing for the court in that case, Judge Coffin said:

> The theme of . . . [*South Windsor* and other] cases is that the recapture regulation overturns vested property rights and is therefore an invalid retrospective act.
>
> Retrospective laws are often viewed with some suspicion. . . . [L]aws that unsettle settled rights can be harsh, and they deserve a special scrutiny. This principle has received explicit constitutional recognition in the taking and contract clauses . . . . Of course, not every law that upsets expectations is invalid; courts have generally compared the public interest in the retroactive rule with the private interests that are overturned by it. . . . Putting aside any attempt to tailor the conclusory label "vested right" to fit Adams' depreciation payments, and inquiring instead into Adams' actual expectations and the reasonableness of those expectations, we find that only a modest private interest is affected by the Secretary's rule. In any retroactivity challenge, a central question is how the challenger's conduct, or the conduct of others in his class, would have differed if the law in issue had applied from the start. If the recapture rule had been laid down in 1966, those providers who planned to stay in the program would not have changed their behavior significantly. In the long run there is no difference between accelerated and straight line depreciation; higher payments generated by the accelerated method in early years are recouped by reduced payments later. Although Adams now claims that it would have chosen straight line depreciation if it had foreseen the recapture regulation, the regulation is designed to leave Adams no better—and no worse—off than if the nursing home had chosen the straight line method in the first place.

Our belief that § 405.415(d)(3) does not offend due process is supported not only by *Adams*, but also by other courts. *See* n. 1, *supra*.

Finally, Fairfax argues that we have expressly prohibited retroactive action in Medicare cases. *Coe v. Secretary of Health, Education, and Welfare*, 502 F.2d 1337 (4th Cir. 1974). In that case, we held that HEW regulations promulgated in June, 1971, should not have been applied retroactively to deny an individual's claim for services rendered in October and November of 1970. *Coe* was not a provider reimbursement case and did not involve adjustments under 42 U.S.C. § 1395x(v)(1)(A). Moreover, in *Coe* retroactive application would have resulted in "manifest injustice," interference with an individual patient's matured right to reimbursement. 502 F.2d at 1340. Similar evidence is absent in the present case. The overpayment arose because Fairfax chose to leave the program before its assets were fully depreciated. If the Secretary had not recaptured the excess depreciation owing to Fairfax's early withdrawal, he would not have discharged his statutory duty to hold provider reimbursements to "reasonable costs." Since there is no evidence of manifest injustice, the Board did not err in applying the change in the Medicare depreciation policy retroactively.

The judgment of the district court is reversed.