393 F.Supp. 367 (1975)
ST. LOUIS UNIVERSITY, a Missouri not for Profit Corporation, Plaintiff,
v.
BLUE CROSS HOSPITAL SERVICE, INC. OF ST. LOUIS, et al., Defendants.
No. 72-638C (4).
United States District Court, E. D. Missouri, E. D.
February 18, 1975.
*368 Bryan, Cave, McPheeters & McRoberts, Thomas V. Connelly and Veryl L. Riddle, St. Louis, Mo., for plaintiff.
Donald J. Stohr, U. S. Atty., St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
This action for review of an administrative decision limiting provider reimbursement under the Medicare Act is before the Court upon the motions of the defendants to dismiss and upon all parties' cross-motions for summary judgment.
Plaintiff St. Louis University, through its hospitals, agreed on June 26, 1966, with the defendant Secretary of Health, Education and Welfare ("Secretary") to provide medical services to individuals under Parts A and B of the Health Insurance for the Aged Act, Pub.Law 89-97, 42 U.S.C. § 1395 et seq., as amended ("Medicare Act"), Title XVIII of the Social Security Act.
Pursuant to 42 U.S.C. § 1395h (1965), defendant Blue Cross Association ("BCA") contracted with the Secretary to serve as a fiscal intermediary in the administration of the Part A Medicare program. The intermediary determines the amount of the payments due to providers from the Secretary for Medicare services. The intermediary also makes the actual reimbursement to the providers, may be required to provide consultative services to providers regarding the maintenance of fiscal records, and is to serve as a channel of communication between providers and the Secretary. 42 U.S.C. § 1395h(a).
BCA subcontracted its duties as a Medicare intermediary in the St. Louis, Missouri, area to defendant Blue Cross Hospital Service, Inc. of St. Louis, doing business as Blue Cross Plan of St. Louis ("Plan"). BCA and its staff work closely with the employees of the Plan and BCA is dependent upon the Plan to carry out BCA's duties as Part A fiscal intermediary.
Pursuant to 42 U.S.C. § 1395u (1965), General American Life Insurance Company ("General American") agreed with the Secretary to serve as a carrier (with duties similar to those of a Part A fiscal intermediary) in the administration of Part B of the Medicare program.
Although plaintiff may have elected to deal directly with the Secretary in its capacity as provider, it nominated BCA and the Plan to provide intermediary services under Part A, and General American as its Part B carrier.
In 1969 a dispute arose between plaintiff and the Plan over the amount of Part B reimbursement due plaintiff for services rendered by physicians employed on salary by plaintiff; General American had previously reviewed plaintiff's reimbursement claim and had approved it. The Plan determined that plaintiff had been overpaid $89,380.00 for the fiscal years ending August 31, 1966, 1967, and 1968, and thereafter proceeded to deduct certain amounts from plaintiff's Part A reimbursement. In reaching this decision the Plan sought advice from BCA on the merits of plaintiff's reimbursement claim. BCA responded with advice contrary to plaintiff's position.
Plaintiff appealed the Plan's decision to the BCA Provider Appeals Committee. This Committee was established by BCA, pursuant to its contract with the *369 Secretary, to resolve provider complaints after a hearing. The Appeals Procedure, under which the Committee acted, provided that the decision of the Committee would be final. The Committee is composed of five members, three of whom are representatives of BCA appointed by the president of BCA; the other two members are chosen by the BCA president from persons nominated by national provider associations also selected by the president of BCA. A quorum of three members is required to conduct a hearing; one of the three must be a BCA vice-president who acts as hearing chairman. Both the provider and the Plan have an opportunity to present evidence, to cross-examine witnesses, and to dispute evidence offered. A stenographic record is kept.
On May 10, 1972, a hearing by the Committee on plaintiff's appeal from the Plan's reimbursement determination was held. On August 16, 1972, the Committee upheld the Plan. Plaintiff commenced this action thereafter.
In their brief filed January 18, 1974, defendants "suggest that this decision [of the BCA Appeals Committee] represents the final, non-reviewable determination of the Secretary . . . .".
Defendants' alternative motions to dismiss and for summary judgment are premised upon the grounds that the Court lacks subject matter jurisdiction and that plaintiff failed to state a claim upon which relief can be granted. Fed.R.Civ.Pro. 12(b) (1), (b) (6).

SUBJECT MATTER JURISDICTION
Plaintiff posits alternative statutory grounds for jurisdiction: 42 U.S.C. § 405(g) (Title II of the Social Security Act), 5 U.S.C. § 702 (Administrative Procedure Act), and 28 U.S.C. § 1331 (federal question). Plaintiff alleges, and it plainly appears from the record, that the amount in controversy exceeds $10,000.00, exclusive of interest and costs.
Plaintiff's claims are three. In Count I plaintiff alleges that the merits of defendants' decision which resulted in the reimbursement limitation is contrary to the provisions of the Medicare Act and the regulations promulgated thereunder, and is "arbitrary, wrongful and discriminatory". To the extent the regulations were correctly interpreted, plaintiff claims they are contrary to the provisions of the Medicare Act and invalid. In Count I plaintiff prays for declaratory relief and for an order directing defendants to properly reimburse plaintiff.
In Count II plaintiff attacks the composition of the BCA Appeals Committee. Plaintiff claims that the review by the Committee, a majority of whom were BCA personnel, did not constitute a fair and impartial review and was a denial of due process of law. Plaintiff further claims that, to the extent that the Appeals Procedure is a delegation by the Secretary of the right to review the decision of the Plan and to determine issues, the delegation is unlawful and denies plaintiff its due process right to impartial administrative review. In Count II plaintiff prays for remand to the Secretary for proper review.
In Count III plaintiff alleges that claims similar to plaintiff's have been allowed, when those claimants utilized a certain bookkeeping method acceptable to the Plan. Plaintiff claims this is unfair, arbitrary and denies plaintiff equal rights and protection of the law; plaintiff prays for relief similar to that sought in Count I.
Defendants assert that this is an action to which the United States has not consented and, therefore, the action is barred by sovereign immunity. The doctrine of sovereign immunity has been severely criticized,[1] but its vitality is unquestionable. See Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969); e. g., Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe, *370 370 F.2d 529 (8th Cir. 1967). It is relevant as a defense to an action, such as this, where the judgment of the Court would "interfere with the public administration" or would "expend itself on the public treasury". Dugan v. Rank, 372 U.S. 609, at 620, 83 S.Ct. 999, at 1006, 10 L.Ed.2d 15 (1963); e. g., Pine View Gardens, Inc. v. Mutual of Omaha Insurance Company, 158 U.S.App.D.C. 294, 485 F.2d 1073 (1973).
Contrary to plaintiff's argument, neither 28 U.S.C. § 1331 nor the Administrative Procedure Act operates to waive sovereign immunity, Twin Cities Chippewa Tribal Council, supra, at 532; nor does the Administrative Procedure Act confer subject matter jurisdiction upon this Court. Id.; see also, Opelika Nursing Home, Inc. v. Richardson, 356 F.Supp. 1338, 1341 (M.D.Ala. 1973), aff'd sub nom. Johnson's Professional Nursing Home v. Weinberger, 490 F.2d 841 (5th Cir. 1974).
Exceptions to the defense of sovereign immunity exist where the subject governmental action is committed without statutory powers or if within those powers, the powers or their exercise are constitutionally void. Larson v. Domestic & Foreign Corporation, 337 U.S. 682, 702, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Malone v. Bowdoin, 369 U.S. 643, 647, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); Dugan v. Rank, 372 U.S. 609, 621-622, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); e. g., Gardner v. Harris, 391 F.2d 885, 888 (5th Cir. 1968). It is not disputed by plaintiff that the Medicare Act empowers the Secretary and the intermediaries to reduce provider reimbursement. See 42 U.S.C. § 1395g. Therefore, the Court concludes that plaintiff's Count II claim alone, raising a constitutional challenge to the BCA hearing process, can survive the defense of sovereign immunity.[2] Jurisdiction to determine the Count II claim exists as granted by 28 U.S.C. § 1331. Temple University v. Associated Hospital Service of Philadelphia, 361 F.Supp. 263, at 267 (E.D.Pa.1973); cf., Wilson Clinic & Hospital Inc. v. Blue Cross of South Carolina, 494 F.2d 50 (4th Cir. 1970); Coral Gables Convalescent Home v. Richardson, 340 F.Supp. 646 (S.D.Fla.1972).
Defendants further argue that 42 U.S.C. § 405(h)[3] precludes this entire action, since that section contains no provision for judicial review of reimbursable cost determinations. This argument must be denied. The Court is pursuaded that § 405(h) forbids judicial review of administrative decisions only where the claimant seeks to bypass review procedures provided by the Medicare Act. Kingsbrook Jewish Medical Center v. Richardson, 486 F.2d 663, 666 (2nd Cir. 1973). As in Temple University, supra, when plaintiff's claim arose, the Medicare Act provided no express procedure for review or appeal of a provider-intermediary dispute of this nature.[4] Section 1395h(a) of Title 42 *371 (1965) provided only that an intermediary's determination of the amount of payments to be paid providers should be "subject to * * * such review by the Secretary as may be provided for by the agreement" between the Secretary and the intermediary. Therefore, the application of § 405(h) to prevent plaintiff from bypassing available review procedures is irrelevant here where plaintiff admittedly did exhaust all available administrative review.
The Court concludes that defendants' motion to dismiss Counts I and III must be sustained, but denied as to Count II.

COUNT II
The record before the Court shows clearly, without any genuine issue of material fact, that the BCA Appeals Procedure, providing for review of the subject Plan-St. Louis University dispute by the BCA Provider Appeals Committee, violated due process by reason of the BCA affiliation of a majority of the Board members. I find the teaching of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), that an impartial decision maker is essential, applicable to plaintiff's due process claim:
We agree with the District Court that prior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker. He should not, however, have participated in making the determination under review. (emphasis added). 397 U.S. at 271, 90 S.Ct. at 1022.
Three of the five Board members who conducted the subject hearing, Chairman Green, Hankle, and Moeller, were BCA employees. BCA had advised the Plan in 1969 on the merits of plaintiff's position and was supportive of the Plan's ultimate decision. Furthermore, BCA was co-contractor with the Plan in providing the intermediary services to plaintiff and the Secretary. The conclusion is inescapable that plaintiff was not afforded a hearing before an impartial decision maker.
The fact that the vote of the Board was unanimous gives defendants faint support. The actual consideration and factors discussed by the members when they deliberated in closed session can only be speculated upon. It is enough to see the overt relationships between the Plan and BCA, and their relationship to the merits of the dispute being considered, to know that plaintiff was not afforded due process.
In fashioning a remedy, the Court is mindful that both the Medicare Act, 42 U.S.C. § 1395h(a) (1965), and the constraints of due process require that the Secretary review the record of any hearing afforded plaintiff. Cf., Appalachian Power Co. v. Environmental Protection Agency, 477 F.2d 495, 504, n. 33 (4th Cir. 1973). The present record is devoid of any such meaningful review by the Secretary that was made in conjunction with the reimbursement limitation and not made in conjunction with the defense of this action.
The Court will remand the plaintiff's appeal from the subject Plan decision to the Secretary for a de novo evidentiary hearing before a tribunal that does not contain employees of BCA.
NOTES
[1] See K. Davis, Administrative Law Treatise, Ch. 27 (1958); Cramton, Nonstatutory Review of Administrative Action, 68 Michigan Law Review 387 (1969-1970).
[2] Section 405(g), Title 42, U.S.C., does not provide for judicial review of a Medicare reimbursement determination. Schroeder Nursing Care, Inc. v. Mutual of Omaha Insurance Company, 311 F.Supp. 405, 408 (E. D.Wis.1970). It is not one of the Title II sections incorporated by reference into Title XVIII of the Social Security Act. See, 42 U.S.C. § 1395 ii.
[3] Section 405(h) was incorporated into the Medicare Act by 42 U.S.C. § 1395ii and provides as follows:

The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 [including present § 1331] of Title 28 to recover on any claim arising under this subchapter.
[4] The 1972 Medicare amendments, Pub.L. 92-603, established a five-member Provider Reimbursement Review Board appointed by the Secretary to determine provider appeals from final intermediary determinations. 42 U.S.C. § 1395oo. These amendments further provided for judicial review of Board decisions. Id. This appeal and review procedure applies only to providers' cost reports for accounting periods ending on or after June 30, 1973. Pub.L. 92-603, § 243(c).