ST. JOHN'S McNAMARA HOSPITAL ORGANIZATION OF the SISTERS OF SAINT BENEDICT OF the BENEDICTINE CONVENT OF ST. MARTIN

v.

The ASSOCIATED HOSPITAL SERVICE, INC., et al.

Civ. No. 73–5029.

United States District Court
D. South Dakota.

Feb. 9, 1976.

Ronald E. Clabaugh, Joseph M. Butler, Rapid City, S. D., for plaintiff.

Charles H. Whiting, Rapid City, S. D., William F. Clayton, U. S. Atty., Sioux Falls, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, District Judge.

Plaintiff St. John's McNamara Hospital, hereinafter St. John's, is a 148 bed nonprofit general short-term hospital located in Rapid City, South Dakota. St. John's brought this action seeking review of a final determination by the Secretary of Health, Education and Welfare, hereinafter Secretary, and its agents Blue Cross Association, hereinafter B.C.A., and the Associated Hospital Service, Inc., hereinafter Associated. St. John's contests the 1971 decision of the Secretary and his agents to recover a significant amount of the medicare costs reimbursed to St. John's from 1966 to 1971 by set-offs from future reimbursable costs due for 1972 and 1973. The decisions made on the important questions presented in this controversy concern the scope of governmental authority and the power of the courts to control its exercise. Such decisions will have a significant impact on the Medicare program, St. John's Hospital, and the local community which the hospital serves.

Plaintiff St. John's, the Secretary, and Associated moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant B.C.A. has now joined in Associated's motion. At the hearing before this Court on August 22, 1975, all parties presented arguments and authorities, certain factual stipulations were approved and received, and additional briefs were requested. Since additional interrogatories have now been submitted and answered and additional briefing completed, this Court now proceeds to determine the pending cross motions for summary judgment.

The following factual framework is necessary to an understanding of this controversy. Since 1966, St. John's has been an authorized provider of "medicare" services pursuant to 42 U.S.C. §§ 1395 and 1395x(u). Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq. establishes the Health Insurance for the Aged and Disabled Program, popularly referred to as Medicare. Under the provisions of 42 U.S.C. § 1395cc(a)(1)(A), provider St. John's agreed not to charge Medicare beneficiaries directly but instead agreed to receive payment for services provided from the Federal Hospital Insurance Trust Fund. Payments due a provider of services are based upon the "reasonable cost of services rendered" as defined in 42 U.S.C. § 1395f(b). Only those costs involved in the services rendered by the provider that are deemed reasonable are reimbursable under the Medicare Program. While the term "reasonable cost" is defined generally in the Act, Congress nevertheless directed the Secretary to establish regulations for determining reasonable cost of services provided. 42 U.S.C. § 1395x(v)(1). Such regulations have been established by the Secretary and properly promulgated. See 20 C.F.R. § 405.401, et seq. Allowances for depreciation of assets is one factor in the · formula used to compute reasonable cost. See C.F.R. §§ 405.416, 405.427.

For purposes of administrating the Medicare program, the Secretary contracted with B.C.A., a private insurance corporation, to act as its fiscal intermediary. B.C.A. was authorized by the Secretary to determine the reasonable cost of services and, thus, the amount reimbursable to providers. See 42 U.S.C. §§ 1395h, 1395f(b), 1395x(v). B.C.A. in turn contracted with Associated, a B.C.A. plan organization, to assume B.C.A.'s obligation in certain geographical areas including Rapid City, South Dakota. It was the obligation of B.C.A. and Associated to receive periodic cost reports from the provider St. John's, make interim payments to St. John's on an estimated cost basis at least monthly, and make a final adjustment to the provider's account annually at the close of the accounting period based upon actual cost. See C.F.R. §§ 405.454(b), 405.-454(f). From 1966 through 1971, B.C.A. and Associated apparently reviewed and approved, with few exceptions, the bills they received from St. John's for Medicare services rendered during that period.

The present dispute began on January 11, 1971, when St. John's was notified by Associated that the depreciation basis used since 1966 would no longer be acceptable. The building which comprises the majority of St. John's corporate assets was built by the Benedictine Convent of St. Martin, Inc. in 1920 and was operated by St. Martin's as a hospital until 1959. In 1959, some six years before the inception of Medicare, St. Martin's transferred the entire hospital business, including the building and equipment, to St. John's Hospital. In 1958, the American Appraisal Company established the fair market value of the transferred assets at $2,183,887.66. Seven years later in 1966 when St. John's was initially authorized as a provider, it submitted and B.C.A. apparently approved, the 1958 established value as a proper depreciation basis. See C.F.R. § 405.417. Each final audit for the years 1966, 1967, 1968, 1969 and 1970 used the 1958 value for depreciation and B.C.A. approved each final audit. In 1971, Associated determined that St. Martin's and St. John's were related within the meaning of C.F.R. § 405.427 and, therefore, determined that historical cost of St. John's assets must be used in lieu of the established 1958 value to determine reasonable cost of services. Although no original cost value was available, Associated arrived at its historical cost basis of $1,372,953.00 by figuring, with an accounting formula, back to 1920 from the 1958 American Appraisal Report. The decreased depreciation value imposed by Associated caused a significant decrease in future reimbursable costs payable to St. John's. In addition, Associated announced that it has recomputed actual cost for the years 1966 through 1971, using its historical basis in lieu of 1958 established value, and determined that overpayments had been made to St. John's for each of those years.

Associated then recouped by setoff from actual cost due for 1971 and 1972 the amount that it had determined was overpaid for 1966 and 1967. B.C.A. and Associated plan to recoup by setoff from payments due for 1973 the amount of claimed overpayment for 1968, 1969 and 1970.

In July, 1971, St. John's filed an appeal with Associated's four-member appeal committee. At the hearing, two members of the committee voted for and two members of the committee voted against Associated's position on depreciation basis. In January, 1972, St. John's filed an appeal with the B.C.A. Appeals Committee which was established in 1970 by B.C.A. pursuant to a contract with the Secretary and then composed of five members. After the hearing held on August 30, 1972, three members of the committee voted for and two members voted against the decision that St. John's was related to St. Martin's and therefore the lower historical depreciation basis must be used in determining reasonable cost.

On March 5, 1973, St. John's filed this action. The Secretary has stipulated that the January, 1972, B.C.A. appeals decision is final under the Medicare Act as it existed then, and that St. John's has completely exhausted its administrative remedies. On July 1, 1973, Mutual of Omaha replaced B.C.A. and became the fiscal intermediary for St. John's Hospital. Mutual has so far agreed with St. John's that the 1958 value as established by American Appraisal is the proper depreciation basis to apply in determining reasonable reimbursable cost, and that historical cost as determined by B.C.A. is not the proper depreciation basis. Thus, the dispute between B.C.A. and St. John's involves fiscal periods beginning May 30, 1966, through and including the fiscal period ending June 30, 1973.

In this action, St. John's presents essentially six claims. (1) St. John's claims that the Secretary's delegation of the right to review an intermediary's decision and determine the issues is unconstitutional. Plaintiff charges that such delegation of quasi-judicial authority to adjudicate disputes between a provider and an intermediary to private insurance corporations such as B.C.A. and Associated

denies plaintiff its due process right to an impartial administrative review. (2) Plaintiff contends that as a result of such delegation to intermediaries that do not publish decisions, provider claims similar to plaintiff's have been quietly allowed by other intermediaries while plaintiff's claim was not allowed by B.C.A., thus, plaintiff contends that equal protection of the law has been denied. (3) Plaintiff claims that the composition of B.C.A.'s Appeals Board is inherently biased and unfair and does not comport with the due process requirements of the Fifth Amendment. Plaintiff alleges that the board was composed of five members, three being appointed by the president of B.C.A., and all three employees of B.C.A. with one of the three a B.C.A. vice president who acted as hearing chairman. Plaintiff charges that the mandatory presence of a B.C.A. vice president imposed command influence over the board's decision, and since a simple majority of three votes constituted a decision, such decision was therefore controlled by B.C.A. and clearly violative of the due process requirements of a fair and impartial hearing. Plaintiff further argues that in fact the three B.C.A. employees voted for Associated's position and the two non-B.C.A. employees voted for plaintiff's position. Plaintiff contends that such control of reimbursable costs by B.C.A. serves B.C.A. in their role as a private insurer of the general public and therefore constitutes a clear conflict of interest. (4) Plaintiff further alleges that the three B.C.A. employees were briefed by B.C.A. counsel and staff and were provided with an interoffice memo stating B.C.A.'s position and the result desired on St. John's appeal, and as a result pre-judged the issues before hearing the evidence. (5) Plaintiff also claims that B.C.A. and Associated withheld, without prior notice and opportunity to be heard, a substantial amount of reimbursable costs and thereby violated due process of law. Plaintiff alleges that the defendant's decision to change the depreciation basis and recoup by setoff claimed overpayments for years past has caused a heavy financial burden. Being a small non-profit hospital in a small midwestern city, St. John's was faced with making up the deficit by discontinuing certain vital services or by increasing charges for non-medicare services. (6) Plaintiff contends that the B.C.A. Appeals decision should be set aside because it was arbitrary and capricious in that it was unsupported by any evidence on the hearing record.

Defendants assert that this is an action to which the United States has not consented and, therefore, the action is barred by sovereign immunity. All defendants initially contended that this Court lacked subject matter jurisdiction, but in their brief of March 13, 1975, B.C.A. and Associated apparently concede that subject matter jurisdiction is proper in this case under 28 U.S.C. § 1331. B.C.A. and Associated also apparently concede in that brief that the Administrative Procedure Act, 5 U.S.C. §§ 701–706, hereinafter A.P.A., applies and provides the scope of review. The Secretary contends that the A.P.A. does not apply because 42 U.S.C. § 405(h) precludes review of this provider cost dispute.

## SUBJECT MATTER JURISDICTION

### Federal Question

■ Plaintiff alleges two alternate grounds for supporting this Court's jurisdiction. The first of these grounds is 28 U.S.C. § 1331. Section 1331 has been frequently relied upon by those Courts which have assumed jurisdiction of cost disputes between a provider and the Secretary. *See e. g. Kingsbrook Jewish Medical Center v. Richardson,* 486 F.2d 663 (2nd Cir. 1973). The amount in controversy exceeds $10,000. This Court concludes, however, that § 1331 jurisdiction is barred by 42 U.S.C. § 405(h), which reads in relevant part:

No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 [now 28 U.S.C. § 1331] to recover on any claim arising under this subchapter.

Section 405(h) is made applicable to the instant case through the provisions of 42 U.S.C. § 1395ii, which dictates that § 405(h) shall fully apply to disputes between providers and the Secretary. While it has been held that despite the language of § 405(h), considerations of due process compel § 1331 jurisdiction to ensure that judicial review is available. *Kingsbrook Jewish Medical Center v. Richardson,* 486 F.2d 663, 667 (2nd Cir. 1973), this liberal construction of § 405(h) has been foreclosed by the recent case of *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The holding in *Salfi* that § 405(h) means what it says with respect to § 1331 jurisdiction over review of a denial of an individual's claim controls the provider's claims in this case because of 42 U.S.C. § 1395ii. Therefore, plaintiff's jurisdictional allegations must fail insofar as they are based on 28 U.S.C. § 1331.

*Administrative Procedure Act*

While the import of *Salfi* clearly precludes § 1331 jurisdiction here, the principle remains sound that complete foreclosure of judicial review of agency action encounters serious constitutional difficulties. *See Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975). That principle of presumptive reviewability leads this Court to carefully scrutinize the issues raised by plaintiff's second jurisdictional contention: that the A.P.A. works as an independent jurisdictional grant. This Court begins its scrutiny cognizant of the holding in *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe,* 370 F.2d 529 (8th Cir. 1967) that § 10 of the A.P.A. does not by itself confer federal jurisdiction. However, since *Twin Cities Chippewa* was decided, a majority of the circuits have squarely held that the A.P.A. is jurisdictionally self-executing. *Ortego v. Weinberger,* 516 F.2d 1005 (5th Cir. 1975); *Sanders v. Weinberger,* 522 F.2d 1167 (7th Cir. 1975); *Pickus v. United States,* 165 U.S.App. D.C. 284, 507 F.2d 1107 (1974); *Bradley v. Weinberger,* 483 F.2d 410 (1st Cir. 1973); *Bard v. Seamans,* 507 F.2d 765 (10th Cir. 1974); *Rothman v. Hospital Service of Southern California,* 510 F.2d 956 (9th Cir. 1975). *See also Deering Milliken, Inc. v. Johnston,* 295 F.2d 856, 863–864 (4th Cir. 1961). *Contra: Bramblett v. Desobry,* 490 F.2d 405 (6th Cir. 1974), *cert. denied* 419 U.S. 872, 95 S.Ct. 133, 42 L.Ed.2d 111 (1974); *Chandoin v. Atkinson,* 494 F.2d 1323 (3rd Cir. 1974). *Cf. Aguayo v. Richardson,* 473 F.2d 1090 (2nd Cir. 1973), *cert. denied* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974). The Eighth Circuit Court of Appeals has indicated that it may wish to reconsider its holding in *Twin Cities Chippewa. See State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099, 1105 n.7 (8th Cir. 1973).

Those Courts which have found that § 10 of the A.P.A. confers jurisdiction have found the unavailability of other avenues of judicial review to be a primary consideration. *See e. g. Ortego v. Weinberger,* 516 F.2d 1005, 1014–1015 (5th Cir. 1975); *Sanders v. Weinberger,* 522 F.2d 1167, 1170 (7th Cir. 1975). *Cf. Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975). § 10(c) of the A.P.A. expresses this policy as follows:

> Agency action made reviewable by statute *and* final agency action for which there is no adequate remedy in a court are subject to judicial review. (Emphasis added.) 5 U.S.C. § 704. *See also* 5 U.S.C. § 702 A.P.A. § 10(a).

The United States Supreme Court has repeatedly formulated the principle of presumptive reviewability by requiring clear and convincing evidence of legislative intent to cut off judicial review. *e. g. Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). Since jurisdiction in the case at bar cannot be predicated upon 28 U.S.C. § 1331, there is no avenue of judicial review other than the Administrative Procedure Act. This Court holds that in these circumstances, § 10 of the Act may provide a jurisdictional predicate.

*Reviewability*

The jurisdictional inquiry is not ended here, however. The A.P.A. by its terms does not apply where either:

(1) statutes preclude judicial review, or

(2) agency action is committed to agency discretion by law. 5 U.S.C. § 701(a)

These two exceptions have been held to constitute jurisdictional hurdles. *Rothman v. Hospital Service of Southern California,* 510 F.2d 956, 958 (9th Cir. 1975). Jurisdiction can thus be found in the A.P.A. only if neither exception applies. At this stage of the jurisdictional inquiry, the policy of presumptive reviewability becomes a rule of statutory construction which sharply narrows the applicability of the 5 U.S.C. § 701(a)(1) and (2) exceptions. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). For the following reasons, this Court concludes that neither of the exceptions apply in this case, and thus assumes jurisdiction under § 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

[3] The first exception, statutory preclusion of judicial review, depends in this case upon a construction of 42 U.S.C. § 405(h), which is made applicable to reimbursable cost disputes by 42 U.S.C. § 1395ii. § 405(h) reads in relevant part:

The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided.

Until 1972, Congress had not expressly provided for judicial review of cost disputes between a provider and the Secretary. 42 U.S.C. § 1395oo now provides for a Provider Reimbursement Review Board, and for review of that Board's decisions. § 1395oo, however, is not applicable to the dispute now before this

Court since it applies only to "accounting periods ending on or after June 30, 1973." P.L. 92–603, § 243(c). For the accounting periods in question, then, this Court must determine whether the lack of an express review provision, coupled with § 405(h), precludes judicial review here. This Court hereby follows the line of reasoning which construes § 405(h) to mean only that a litigant cannot circumvent those review procedures which have been specifically outlined in either the Social Security or the Medicare Act. Under this line of reasoning, § 405(h) does not preclude judicial review of questions which, like those presented here, are not among those for which Congress set out specific review procedures. A majority of the Circuits which have considered this question have adopted this approach. *Rothman v. Hospital Service of Southern California,* 510 F.2d 956 (9th Cir. 1975); *Kingsbrook Jewish Medical Center v. Richardson,* 486 F.2d 663 (2nd Cir. 1973); *Ruiz-Olan v. Secretary, Department of Health, Education, and Welfare,* 511 F.2d 1056 (1st Cir. 1975); *Maddox v. Richardson,* 464 F.2d 617 (6th Cir. 1972); *Davis v. Richardson,* 460 F.2d 772 (3rd Cir. 1972). While the Fifth Circuit Court of Appeals left this question open in *Green v. Weinberger,* 500 F.2d 203 (5th Cir. 1974), the more recent case of *Mount Sinai Hospital v. Weinberger,* 517 F.2d 329 (5th Cir. 1975), indicates that the Fifth Circuit has aligned itself with the majority holding that the presumption of reviewability is not overcome by § 405(h). The District Court in *Mount Sinai* held that § 405(h) did not preclude review of the Secretary's decision to recoup overpayments, and that such recoupments were unconstitutional. 376 F.Supp. 1099 (S.D.Fla. 1974). The Court of Appeals reversed on the recoupment issue and remanded for a determination of whether the recoupment regulations were followed and whether the procedures used violated due process. It may be inferred from the nature of the remand in *Mount Sinai* that the Court of Appeals for the Fifth Circuit assumed that § 405(h) did not preclude review of the merits of the

claims. *See also Columbia Heights Nursing Home and Hospital, Inc. v. Weinberger,* 380 F.Supp. 1066 (M.D.La. 1974); *Coral Gables Convalescent Home, Inc. v. Richardson,* 340 F.Supp. 646 (S.D. Fla.1972), *Temple University v. Associated Hospital Service of Philadelphia,* 361 F.Supp. 263 (E.D.Pa.1973), *St Louis University v. Blue Cross Hospital Service, Inc.,* 393 F.Supp. 367 (E.D.Mo.1975). *Contra: Neighbors v. Secretary of Health, Education and Welfare,* 511 F.2d 80 (10th Cir. 1974). The fact that in 1972 Congress enacted 42 U.S.C. § 1395 oo does not alter this Court's conclusion that § 405(h) does not preclude review of pre-1972 cost disputes. *Kingsbrook Jewish Medical Center v. Richardson,* 486 F.2d 663, 668 (2nd Cir. 1973). In this connection, it should be noted that § 1395oo broadens the available review of administrative determinations of cost disputes. § 1395oo (d) requires that such determinations be based on the record of a hearing, and requires that they be supported by substantial evidence. *See* 5 U.S.C. § 706(2)(E). On the other hand, as will be discussed below, pre-1972 disputes such as this are reviewable only for compliance with constitutional and statutory provisions, or for arbitrary or capricious agency action. *See* 5 U.S.C. § 706(2)(A)(B)(C)(D).

In summary, § 405(h) does not, in the judgment of this Court, provide the clear and convincing evidence necessary to overcome the presumption of reviewability.

■ The applicability of the exception in 5 U.S.C. § 701(a)(2) for unreviewable discretionary action turns on whether the statutes in question "are drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820–821, 28 L.Ed.2d 136 (1971). In the instant case, the Secretary is authorized by 42 U.S.C. § 1395x(v)(1)(A) to promulgate regulations for determining the reasonable cost of services. At all times relevant to this action, § 1395x(v)(1)(A) required as it does now, that the Secre-

tary, in prescribing these regulations, consider:

> among other things, the *principles generally applied by national organizations* or *established prepayment organizations* (which have developed such principles) in computing the amount of payment, to be made by persons other than the recipients of services, to providers of services on account of services furnished to such recipients by such providers. (Emphasis added.)

Thus, the Secretary is required by law to ascertain the prevailing practices of insurers and similar organizations, and apply those practices to his consideration of each factor that leads to a determination of reasonable cost. In the judgment of this Court, the presence of these guidelines removes the matter at hand from the limited category of agency actions that are so far committed to agency discretion as to be unreviewable. *See Rothman v. Hospital Service of Southern California,* 510 F.2d 956 (9th Cir. 1975). *County of Alameda v. Weinberger,* 520 F.2d 344, 347 n.6 (9th Cir. 1975). *See also Ratnayake v. Mack,* 499 F.2d 1207 (8th Cir. 1974). This limitation, "committed to agency discretion," was denoted as "a very narrow exception" in *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). In this case there is law to apply, and 5 U.S.C. § 701(a)(2) poses no bar to this Court's jurisdiction.

*Sovereign Immunity*

The extended jurisdictional inquiry in this case, however, is not yet complete. As stated above, defendants contend that the doctrine of sovereign immunity presents a complete bar to this Court's jurisdiction because the government has not consented to be sued. Although the doctrine has been held to be a jurisdictional bar to review of administrative decisions, *see Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), *Larson v. Domestic and Foreign Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), it is the judgment of this Court

that sovereign immunity does not apply here.

A majority of the Courts of Appeals that have recently decided whether sovereign immunity is a bar to administrative review have held that the A.P.A., where applicable, constitutes a waiver by the government of sovereign immunity. *Eastern Kentucky Welfare v. Simon,* 165 U.S.App.D.C. 239, 506 F.2d 1278, 1283 (1974) *citing Scanwell Laboratories, Inc. v. Shaffer,* 137 U.S.App.D.C. 371, 424 F.2d 859 (1970); *Kingsbrook Jewish Medical Center v. Richardson,* 486 F.2d 663, 669 (2nd Cir. 1973) *quoting Kletschka v. Driver,* 411 F.2d 436, 445 (2nd Cir. 1969); *Schlafly v. Volpe,* 495 F.2d 273 (7th Cir. 1974); the Tenth Circuit has held that where the A.P.A. is not applicable the Act does not waive sovereign immunity, *Motah v. United States,* 402 F.2d 1, 2 (10th Cir. 1968), however, when review is not precluded by statute and there is law to apply the A.P.A. operates to remove the doctrine's bar to review. *National Helium Corporation v. Morton,* 455 F.2d 650, 655 (10th Cir. 1971), *citing* 3 K. Davis, Ad.Law Treatise, § 25.01, *et seq.* (1958); *Estrada v. Ahrens,* 296 F.2d 690 (5th Cir. 1961), *United States v. Joseph G. Moretti, Inc.,* 478 F.2d 418, 432 (5th Cir. 1973), the Fifth Circuit also follows the generally accepted qualification that such waiver provided by the A.P.A. does not extend so far as an action *ex contractu* for money, *Warner v. Cox,* 487 F.2d 1301, 1305 (5th Cir. 1974); and the Ninth Circuit adopted a somewhat modified A.P.A. waiver theory in *Adams v. Witmer,* 271 F.2d 29, 35 n.9 (9th Cir. 1958) by holding that the A.P.A. does not constitute a blanket waiver of sovereign immunity, thus, the A.P.A. may provide a basis for review if, and only if, the immunity doctrine is not so controlling so as to bar the suit, *see also, State of Washington v. Udall,* 417 F.2d 1310, 1320 (9th Cir. 1969); the Fourth Circuit apparently follows the Ninth Circuit modification and has held that when the immunity doctrine is so transcending as to require dismissal of the suit, the A.P.A. does not provide for review, *Littell v. Morton,* 445 F.2d 1207, 1213 (4th Cir. 1971) quoting *State of Washington, supra.* The First Circuit has not considered the issue recently, but in *Cyrus v. United States,* 226 F.2d 416, 417 (1st Cir. 1955) it adopted the view that the A.P.A. is not a waiver of sovereign immunity. *Twin Cities Chippewa Tribal Council v. Minnesota,* 370 F.2d 529, 532 (8th Cir. 1967) has been cited as authority for rejection of the A.P.A. waiver theory, *see Littell v. Morton,* 445 F.2d 1207, 1212 (4th Cir. 1971), however, the Court also held that in that case the agency action complained of was discretionary, thus expressly beyond the purview of § 10 of the Act, *citing Chournos v. United States,* 335 F.2d 918 (10th Cir. 1964), a case wherein the A.P.A. also did not apply. In *Jones v. Freeman,* 400 F.2d 383, 389 (8th Cir. 1968), the Eighth Circuit held that the government has no right to claim sovereign immunity where review is not precluded by statute or agency action is not committed to agency discretion by law because the A.P.A. then applies and waives sovereign immunity.

Other federal courts have held that the A.P.A., where applicable, constitutes a waiver by the government of sovereign immunity. *See American Federation of Government Employees v. Callaway,* 398 F.Supp. 176, 192 (N.D.Ala.1975) and cases cited therein.

The United States Supreme Court, in *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970) made it clear that where there is no statutory prohibition of judicial review, and there is law to apply, all agency action is presumed to be reviewable.

■ The rationale underlying the A.P.A. waiver principle adopted by the above authorities is that the doctrine of sovereign immunity is inapplicable where the government has consented to be sued. Where the A.P.A. applies, such consent is found in § 702 which provides

that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." This Court hereby follows the line of reasoning which construes § 702 to mean that Congress, by providing judicial review in actions brought by "[any person] adversely affected or aggrieved by any agency action," permitted suits against the government and, therefore, through the A.P.A., Congress created a clear waiver of sovereign immunity in actions to which it applies. *See Estrada v. Ahrens, supra,* at 698. In *Scanwell Laboratories, Inc. v. Shaffer,* 137 U.S. App.D.C. 371, 424 F.2d 859 (1970) the Court further clarified the principle:

> It seems axiomatic to us that one must imply, from a statement by the Congress that judicial review of agency action will be granted, an intention on the part of Congress to waive the right to sovereign immunity; any other construction would make the review provision illusory. 424 F.2d at 874.

Additionally, the protections afforded by the doctrine are to a large degree incorporated into the exceptions of 5 U.S.C. § 701(a). Where administrative review would traditionally be inappropriate, the § 701(a) exceptions of "statutes preclude judicial review" and "committed to agency discretion by law" prevent review under the A.P.A.

▮ Even under the traditional approach, the doctrine does not bar review in this case. Plaintiff's claim that the Secretary has acted unconstitutionally and beyond the scope of his authority is a claim to which sovereign immunity is no defense. *Jones v. Freeman,* 400 F.2d 383, 387 (8th Cir. 1968). Plaintiff's claim that the Secretary arbitrarily failed to do acts required by law brings this case within the exception noted in *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). Furthermore, in the opinion of this Court, the plaintiff's prayer for relief will not require affirmative action by the sovereign or the disposition of unquestionably sovereign

property. *Larson, supra,* 337 U.S. at 689, 69 S.Ct. 1457. Plaintiff requests only that defendants cease unauthorized withholding and recoupment of reimbursable costs. Declaratory and injunctive relief against the Secretary does not contravene traditional sovereign immunity. *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946), *State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099, 1123 (8th Cir. 1973), *citing Rockbridge v. Lincoln,* 449 F.2d 567, 573 (9th Cir. 1971). The resultant release of funds prayed for is only to the extent that Congress has already authorized them to be appropriated to the Federal Hospital Trust Fund and distributed by the Secretary to providers such as plaintiff. 42 U.S.C. § 1395cc(a)(1)(A). *State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099, 1123 (8th Cir. 1973).

Having found that § 405(h) permits judicial review without expressly providing for it, and having found that this action is not precluded by statute or committed to agency discretion by law, and having further found that the A.P.A. applies in this case this Court is persuaded that the government has consented to this suit. Additionally, in the judgment of this Court the traditional policy justifications for the doctrine of sovereign immunity are not applicable in this case, thus, the doctrine does not bar jurisdiction to review this dispute.

## REVIEW OF ADMINISTRATIVE ACTION

### The Agency Hearing and Decision

The final decision from which the hospital has appealed to this Court is based on a hearing held on August 30, 1972, before the "Blue Cross Association Medicare Provider Appeals Committee." The Committee states in its introduction to the hearing transcript that the decision was ". . . based upon presentations and responses to questions during the hearing, including the documents furnished the Committee before and during the hearing," (Committee Opinion at p. 1), and counsel for the defendants

have stipulated that at the August 30, 1972 hearing "a complete transcript containing the facts relied upon by the Blue Cross Association Appeals Committee was made and the Committee filed a written decision." Because the findings of the Committee are conclusory in nature, this Court deems it necessary to summarize as follows the matters presented at that hearing.

In 1895 St. Martin's was incorporated under the laws of South Dakota (Tr. 15). The members of St. Martin's Corporation consist of members of the St. Martin's Convent who have passed through a series of stages culminating in their recognition as "professed religious" (Tr. 15). After a final stage in their religious development, the convent members become voting members of St. Martin's Corporation (Tr. 15). In 1958 St. Martin's Corporation consisted of approximately one hundred voting members (*Id.*). In 1966 this number had decreased to about ninety (Tr. 16). St. Martin's Corporation is governed by a Board of Trustees, which consists of the convent's religious superior or prioress, two other officers of the convent, and five members chosen from the body of the St. Martin's Corporation (Tr. 26–27).

In 1955 St. John's McNamara Hospital was incorporated under the laws of South Dakota (Tr. 18). A primary reason for St. John's incorporation was to civilly separate the hospital operation from St. Martin's in recognition of the steady erosion of the doctrine of charitable immunity (Tr. 19). The Articles of Incorporation reflect that its three incorporators, and its five original directors, were members of St. Martin's Convent. At all times relevant to this dispute, all members of St. John's Corporation (as distinguished from its Board of Directors) were also members of the St. Martin's Corporation, although each of them had not necessarily attained voting status in St. Martin's (Tr. 19–21). The members of St. John's Corporation are all appointed by the Prioress of St. Martin's (Tr. 57). Members of St. John's Board of Directors are elected by St. John's members. The St. John's Board is the primary policy maker for St. John's, and, except for the sale of property, between elections its actions need not be approved by the members of the corporation (Tr. 43). All members of St. John's Corporation work at the hospital (Tr. 28). In 1972 the membership of St. John's Corporation had grown to thirteen from its 1958 number of nine (Tr. 20, 22). St. John's Corporation is governed by its Board of Directors, and until the end of 1965 all members of the St. John's Board of Directors were also members of St. Martin's Convent (Tr. 22). Since 1966 St. John's Board has included lay persons. Since its incorporation since 1955 a permanent board of twelve lay persons advised St. John's Board of Directors (Tr. 44). As of 1958, the St. John's Board was composed of eight members, including the Prioress of St. Martin's, two other members of the St. Martin's Board of Trustees, and five members of St. John's Corporation (Tr. 29). The composition of the St. John's Board of Directors has since changed so that in 1966 it was made up of the St. Martin's Prioress, two Trustees of St. Martin's, the Administrators of St. John's Hospital and St. Joseph's Hospital located in Deadwood, South Dakota, and four members of St. John's Corporation (Tr. 30). The Administrator of St. Joseph's Hospital was a lay person (*Id.*). By 1972 the St. John's Board of Directors had expanded to include eight lay persons chosen from the community, in addition to the Prioress, two St. Martin's Trustees, and the two hospital administrators (*Id.*). Therefore at the time of the B.C.A. hearing, St. John's Board of Directors consisted of four religious and nine lay persons. The eight lay persons who are chosen from the citizenry at large cannot be members of St. Martin's. (Tr. 30, 42, 45). The lay members of the St. John's Board of Directors may not be members of the St. John's Corporation since St. John's Articles of Incorporation require that its corporation members be members of St. Martin's Convent (Tr. 45). The lay members have been at all times independent. The religious mem-

bers cannot tell the lay members what to do (Tr. 39–40). In 1966 Sister Sarto, who is a voting member of St. Martin's Corporation (Tr. 14), became the Assistant Administrator of St. John's Hospital and from 1967 on served as Administrator (Tr. 17). Her position as Administrator is subject to vote of the St. John's Board of Directors (Tr. 58). She testified that the members of the St. John's Corporation could not control the St. Martin's Corporation since they constitute roughly only ten percent of the membership of St. Martin's (Tr. 22–23).

In 1955 St. Martin's began a plan for financing the building of a new Mother House in Rapid City (Tr. 35). Part of the plan involved the sale of debentures which were secured in part by a mortgage on the hospital building then owned by St. Martin's (*Id.*). In 1958 the hospital building and equipment were valued at $2,183,887.66 by the American Appraisal Company. The building plans were laid out in 1955 and American Appraisal was hired in 1956 and completed their report in 1958 (Tr. 38). The appraisal was conducted in order to establish a value of the secured property, but was also motivated by the policy recommendations of Blue Cross and both the American and Catholic Hospital Associations to consider the use of appraised value rather than original cost as a means of ensuring higher and therefore more equitable reimbursement (Tr. 35, 36). These policy recommendations were in apparent recognition of increased costs due to advancing medical technology (Tr. 49). Blue Cross reimbursed for a period of two years in the early 1960s some member hospitals on the basis of appraised value rather than historical cost but changed to historical cost when it decided that appraised value was costing Blue Cross too much money (Tr. 37). Blue Cross now wants depreciation based upon historical cost and uses the same basis in its private insurance plans (Tr. 49, 63). A third reason for the 1958 appraisal was to establish a bookkeeping system for St. John's Corporation, since by then St. Martin's had decided to make a gift of the hospital and equipment to St. John's (Tr. 36). The established appraised value has consistently been used by St. John's since 1958 as the basis for charges for its patients, and since 1966 when St. John's became a provider, the appraisal basis has consistently been used as a basis for changes for Medicare and non-Medicare patients alike (Tr. 62). B.C.A. contends that it was unaware that St. John's was being reimbursed on the 1958 appraisal value, although all the cost figures for each accounting period were submitted to and available at B.C.A. (Tr. 61).

The gift of the hospital building and equipment was accomplished by early 1959 (Tr. 42). The use of the hospital building as security for the sale of debentures was therefore accomplished by St. Martin's before the building was transferred to St. John's (Tr. 8). Since 1959, the hospital building and equipment were no longer treated as an asset and no longer carried on the books of St. Martin's (*Id.*). The property in question, which remained in the hands of St. John's at all times relevant to this dispute, can be mortgaged or encumbered only with the approval of the St. John's Board of Directors (Tr. 30), regardless of the financial needs of St. Martin's (Tr. 39). Since 1966 all transfers of St. John's property has been done by St. John's and not by the board of St. Martin's (Tr. 31). St. Martin's does not have the power or the means to use the properties of St. John's for collateral to raise funds (Tr. 39). St. John's property can be mortgaged only if the Board of Directors of St. John's authorizes it (Tr. 40). There is no way that St. Martin's could influence St. John's in that decision (Tr. 40). This approval has been required ever since the gift was made (Tr. 40). A conveyance of the property requires approval of the entire St. John's Corporation (Tr. 43). In the event St. John's were to dissolve, the property would revert to St. Martin's or be used for another religious purpose subject to approval under canon law (Tr. 58). Upon dissolution St. John's board has the

power to devote its assets to whatever purpose it wants (Tr. 59). Canon law is irrelevant to property value or transfers of property since canon law is concerned only with the quality and progress of apostolic work being undertaken and accomplished by religious orders (Tr. 32).

Income or profits of St. John's are by express agreement prohibited from and have never been diverted to St. Martin's. The only benefit since 1959 that has accrued to St. Martin's from St. John's is by way of salary to the sisters who are employed at the hospital (Tr. 65–66). B.C.A. concedes that if St. Martin's and St. John's were non-religious corporations St. Martin's would have no power to control St. John's and the two corporations would not be related. B.C.A. maintains, however, that the power to control exists here "because we are talking about a sister situation" (Tr. 81).

Based on the foregoing, the three Blue Cross employee members of the Appeals Committee drew the following conclusion:

The majority of the Committee finds that the provider and the order, for the purpose of determining historical cost, come under the definition of Section 405.427(b)(1) "Related to the Provider." This definition states that: "Related to the provider means that the provider to a significant extent is associated with or affiliated with or has control of or is controlled by the organization furnishing the services, the facilities, or supplies."

The Committee, in a three to two decision, finds that if any one of these criteria are applicable, then the related organization concept applies. (Majority Opinion at pp. 1–2).

The two non-Blue Cross members of the B.C.A. Appeals Committee concluded:

The 1958 appraisal value has been used and accepted since 1958 (through 1972) to set charges for this provider for all patients and third-party payors. Accounting procedures which are permitted by appropriate regulations should be consistently followed once they are properly selected. This is in accordance with "generally accepted accounting principles" which require reporting on a basis "consistent with preceding periods." Further, Section 405.415 of the Code of Federal Regulations allowed (for Medicare reimbursement) this value to be used in the case of donated assets.

While it is true that members of the corporation are also members of the order, no evidence was introduced to indicate control of the hospital by the convent. Considerable testimony was given which denies such control, i. e., no sharing of income or losses; autonomy of hospital board of trustees; administration appointed by and responsible to the board; majority of non-religious membership on governing board, etc.

The control of each separate entity remains with its respective members. By the very nature of the Catholic order, all members of the order are related to each other by their "sympathy, marked by a community of interest." However, this does not mean common ownership or financial control exists in the various separate organizations.

We therefore file this minority opinion that these organizations are separate, and any attempt to relate them because of involved individual's common membership in a religious order would be discriminatory and not proper interpretation of meaning or intent of the Medicare Regulations.

It appears from these facts that the procedures followed by the provider were consistent and were not precluded by a reasonable interpretation of the Regulation. Therefore, depreciation as reported by the hospital should be allowed as a reimbursable cost. (Minority Opinion at p. 2.)

*Scope of Review*

■ The standard of this Court's review of the final decision of the Blue Cross Association Medicare Provider Ap-

peals Committee is framed by 5 U.S.C. § 706, which provides in relevant part:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

\* \* \* \* \* \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege or immunity;

(C) in excess of statutory jurisdiction authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

\* \* \* \* \* \*

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

Because prior to the 1972 enactment of what became 42 U.S.C. § 1395*oo* there was no statutory requirement that the agency determination be made on the record after hearing, this Court is not empowered to review this dispute under the substantial evidence standard of 5 U.S.C. § 706(2)(E). *Rothman v. Hospital Service of Southern California,* 510 F.2d 956 (9th Cir. 1975); *Ruiz-Olan v. Secretary, Department of Health, Education, and Welfare,* 511 F.2d 1056 (1st Cir. 1975).

■ Turning first to the review provisions of 5 U.S.C. § 706(2)(A), this Court ". . . must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the

facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency. (Citations omitted.)" *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–824, 28 L.Ed.2d 136 (1971). *See also CPC International, Inc. v. Train,* 515 F.2d 1032, 1044 (8th Cir. 1975).

The Eighth Circuit Court of Appeals has characterized the test as requiring that the agency decision be supported by a national basis. *First National Bank of Fayetteville v. Smith,* 508 F.2d 1371, 1376 (8th Cir. 1974). *See also Sabin v. Butz,* 515 F.2d 1061, 1067 (10th Cir. 1975). The law in this Circuit requires that the party challenging the agency decision must show that the decision constitutes "willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case." *First National Bank of Fayetteville, supra. Greenhill v. Bailey,* 519 F.2d 5, 10 n.12 (8th Cir. 1975).

■ After a "searching and careful inquiry into the facts," this Court is constrained to conclude that plaintiff has failed to meet that burden. While it is obviously true that most of the evidence supported plaintiff's position and the minority view, there is arguably some support in the record for the majority opinion. Thus, it cannot be said with confidence that this agency decision "is not supportable on any rational basis." *First National Bank of Fayetteville v. Smith,* 508 F.2d 1371, 1376 (8th Cir. 1974). Even though this Court may not agree with the majority's conclusion, the "standard of review is a narrow one" and this Court "is not empowered to substitute its judgment for that of the agency." *C.P.C. International, Inc. v. Train,* 515 F.2d 1032, 1044 (8th Cir. 1975).

## CONSTITUTIONAL CLAIMS

*Bias-Interest*

■ Plaintiff contends that the composition of the B.C.A. Provider Appeals

Committee made that Committee inherently biased, thus depriving plaintiff of due process of law. This contention presents a substantial federal question, *Temple University v. Associated Hospital Service of Philadelphia*, 361 F.Supp. 263, 267 (E.D.Pa.1973), and is of course within the scope of review afforded under 5 U.S.C. § 706(2)(B).

This Court begins its examination of this contention with the premise that plaintiff was constitutionally entitled to an impartial decision maker. Within the context of this basic concept,

> . . . our system of law has always endeavored to prevent even the probability of unfairness. . . . no man is permitted to try cases where he has an interest in the outcome. Circumstances and relationships must be considered . . . "justice must satisfy the appearance of justice." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). *See also American Cyanamid Company v. F. T. C., 363 F.2d 757, 767 (6th Cir. 1966).*

The circumstances and relationships present in the B.C.A. Provider Appeals Committee must be closely examined to determine whether the situation of the members of the B.C.A. Provider Appeals Committee lent them an interest in the outcome of the dispute that was "of such a nature as would offer a possible temptation to the average person sitting as a decision-maker." *Ward v. Village of Monroeville, Ohio,* 409 U.S. 57, 60, 93 S.Ct. 80, 83, 34 L.Ed.2d 267 (1972). Whether an Appeals Committee member would directly receive a share of any pecuniary benefits derived from the outcome of the dispute is not a determinative factor. *Id.* It is clear that this standard of impartiality fully applies to administrative as well as judicial decision makers. *Gibson v. Berryhill,* 411 U.S. 564, 578–579, 93 S.Ct. 1689, 1697–1698, 36 L.Ed.2d 488 (1973).

With the foregoing principles in mind, this Court turns to an examination of the composition of the B.C.A. Provider Appeals Committee. The structure of the Committee is outlined as follows by its guidelines and procedural rules:

> The *President of BCA* shall establish a BCA Provider Appeals Committee, composed of *five members,* to hear and decide appeals from providers dissatisfied with the local handling of complaints. *Three members* of the Committee shall be *representatives of BCA appointed by the President of BCA:* he also will appoint their alternates. The other *two members* of the Committee shall be chosen from representatives of certain national associations of providers. These members and their alternates shall be *designated by the President of BCA* from persons nominated by national associations *selected by the President.*

> A hearing may be conducted by, and the decision thereon *rendered by three members* or their alternates, but *at least one of those present shall be a vice president of BCA. BCA shall be represented by the majority of the hearing and deciding members* of the Committee and no less than one member from a provider national association selected by the provider shall be present. (Emphasis added.)

■ Obviously, B.C.A. and Associated have a financial interest in the outcome of the dispute through their position as fiscal intermediary. This interest is amplified by the fact that B.C.A. also functions as a private insurer and in this capacity reimburses plaintiff for the care of those non-Medicare patients who are insured by B.C.A. plans. Thus, the ultimate resolution of this dispute may well affect the reimbursement formulae used by B.C.A. in its dealings as a private insurer with plaintiff and with other hospitals (Transcript of Appeals Committee Hearing at pp. 49, 60, 61, 63). In the judgment of this Court, the interest of B.C.A. and its agent Associated had a substantial possibility of influencing the three B.C.A. employees who constituted a majority of the Appeals Committee. Further, the nature of the interest, viewed in light of the relationship of B.C.A. with the Appeals Committee and

with providers, would offer a temptation to the Blue Cross employees as decision-makers to arrive at a decision favorable to B.C.A. In short, this Court has no difficulty agreeing with the result reached in *St. Louis University v. Blue Cross Hospital Service, Inc.*, 393 F.Supp. 367 (E.D.Mo.1975). In that case the Court held that an Appeals Committee structured in a manner identical to the composition of the Committee under review here showed a clear violation of due process. B.C.A. affiliation with a majority of the decision-makers was held unconstitutional. 393 F.Supp. 367 at 371. *See also Faith Hospital Service v. Blue Cross Hospital Service, Inc. of St. Louis,* 393 F.Supp. 601 (E.D.Mo.1975).

B.C.A. and Associated, however, argue that no constitutional defect existed in the selection procedure and composition of the Provider Appeals Committee. This Court does not agree. One must be extremely naive and uninformed in the principles of human behavior not to recognize the clear conflict of interest existing here. Moreover, in this Court's judgment, the composition of the Appeals Committee represents blatant over-reaching by B.C.A. and an arrogant abuse of the trust placed in B.C.A. by the Secretary. There was no element of necessity here that required the Committee be composed as it was. B.C.A. has clearly breached its fiduciary responsibility as fiscal intermediary and agent of the government by engineering a conflict of interest into this Committee. In adjudicating disputes between itself and a provider, B.C.A. and Associated, when acting for the Secretary must adhere to the strictest standard of fairness. In these circumstances "justice must satisfy the appearance of justice." *In re Murchison, supra,* 349 U.S. at 136, 75 S.Ct. at 625, 99 L.Ed. at 946. This Court therefore holds that the Provider Appeals Committee decision is void and therefore must be set aside.

In the context of summary judgment the defendants do not contend, nor could they, that facts material to this issue are in dispute. The rules of the Committee set out above and the introductory remarks of the Chairman on the transcript of hearing establish as uncontroverted fact that: (1) the B.C.A. Provider Appeals Committee was established in 1970 by B.C.A. pursuant to a contract with the Secretary to hear and decide disputes between B.C.A. and the provider, (2) all five members of the Committee were selected by the President of B.C.A., (3) three members of the Committee were appointed by the President of B.C.A. and were employees of B.C.A. with one of the three a vice-president of B.C.A. who acted as hearing chairman, (4) a vote of three members constituted a decision of the committee as long as one of the members present was a B.C.A. vice-president, and (5) B.C.A. was represented by a majority of the hearing and deciding members. As to these material facts, this Court finds that there exists no genuine issue and that Plaintiff St. John's is entitled to summary judgment as a matter of law. R. 56, Fed.R.Civ.P. Therefore, the decision of the B.C.A. Provider Appeals Committee is hereby declared void *ab initio* and the motions of B.C.A., Associated and the Secretary for summary judgment are denied. Plaintiff's motion for summary judgment is granted.

This cause is hereby remanded for an administrative hearing in accordance with the dictates of due process. This case is unique and calls for a special remedy since neither Congress nor the Secretary has established a hearing procedure which satisfies the basic requirements of due process for the fiscal periods involved in this case. Thus, it is necessary for this Court to establish guidelines for the procedure to be followed on remand in order to provide an adequate remedy. A Special Provider Appeals Board empaneled to hear this provider dispute shall be established by the Secretary of Health, Education and Welfare in accordance with the provisions of 42 U.S.C. § 1395oo (h), 20 C.F.R. § 405.1845(a)(d), and 20 C.F.R. § 405.-1847. The Secretary shall make every reasonable effort to insure that members assigned to the board are fair and impar-

84

tial and that no member has been appointed by or is an employee, agent or associate of any fiscal intermediary. The Secretary shall establish such board forthwith and shall present in writing to this Court the name of each member assigned, the name of each member's employer, each member's occupation and any known relationship between a member of the board and the parties to this action. This Court retains jurisdiction in this case in order to hear and decide any objections to the composition of the Special Provider Appeals Board. Upon rehearing, a full and true accounting of St. John's provider account for the years 1966 through 1973 shall be presented by B.C.A. and Associated.

Since this Court's ruling above grants plaintiff substantially the remedy requested and allows the administrative process a second opportunity to accomplish its obligations under the law, this Court does not reach the other constitutional issues raised by the plaintiff.

This memorandum opinion constitutes the findings of fact and conclusions of law of this Court in accordance with Rule 52 of the Federal Rules of Civil Procedure.